**HOYT, Appellee,**

v.

**HEINDELL et al., Appellants.**

[Cite as *Hoyt v. Heindell*, 191 Ohio App.3d 373, 2010-Ohio-6058.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

Nos. 2009–L–151 and 2009–L–152.

Decided Dec. 10, 2010.

374

Dworken & Bernstein Co., L.P.A., and Anna M. Parise, for appellee.

Judson J. Hawkins, for appellants.

TIMOTHY P. CANNON, Judge.

{¶ 1} Appellants, Richard S. and Elizabeth J. Heindell, appeal the judgments entered by the Domestic Relations Division of the Lake County Court of Common Pleas. The trial court issued civil protection orders against the Heindells.

{¶ 2} Appellee, Jason Hoyt, and Elizabeth Heindell have a child together, E.H., who was born in 1996.[1] Hoyt and Elizabeth Heindell were never married. A custody proceeding took place in the Juvenile Division of the Lake County Court of Common Pleas, resulting in Elizabeth Heindell's being designated the residential parent of E.H. Hoyt had visitation with E.H. on alternating weekends. At the time of the incident in question, Elizabeth Heindell lived in Willoughby, Ohio, and Hoyt resided in Jefferson, Ohio.

{¶ 3} In 1999, Elizabeth Heindell married Richard Heindell. In addition to E.H. and Richard Heindell's children from a previous relationship, the Heindells have three children together.

{¶ 4} On Sunday, January 4, 2009, E.H. was concluding his weekend visitation at Hoyt's residence. The Heindells traveled to Hoyt's home to pick up E.H. in their van, with Richard Heindell driving, Elizabeth Heindell in the front passenger seat, and their three children in the back. Upon the Heindells' arrival at Hoyt's residence, E.H. entered their van. E.H. stayed in the van only a few seconds and then went back into Hoyt's residence under the pretext of retrieving a notebook. Once inside, E.H. told Hoyt that there was an open container of beer in the cup holder of the center console of the van. Hoyt contacted the Jefferson Police Department, and Patrolman Gregory Lachey responded to the scene.

{¶ 5} Patrolman Lachey asked Richard Heindell if there were any containers of alcohol in the vehicle, which Richard Heindell initially denied. However, during a search of the vehicle, four empty beer cans were found in the center console. Patrolman Lachey performed field sobriety tests on Richard Heindell. At the hearing, Patrolman Lachey testified that Richard Heindell passed the finger-to-nose and heel-to-toe tests, but failed the one-leg-stand test.[2] Richard Heindell told Patrolman Lachey that he had consumed three beers during the afternoon prior to leaving for Hoyt's residence.

---

1. We will refer to the minor child by his initials.

2. While he initially testified that Richard Heindell had failed the one-leg-stand test, Patrolman Lachey later testified, on cross-examination, that he had not failed the test.

{¶ 6} Patrolman Lachey did not arrest Richard Heindell for operating a motor vehicle while under the influence of alcohol ("OVI") or for child endangering. However, he testified that he gave Richard Heindell a "misdemeanor citation" but did not specify what the citation was for. Patrolman Lachey permitted the Heindells and E.H. to leave when another family member arrived to drive the vehicle.

{¶ 7} On January 8, 2009, Hoyt filed a petition for a domestic-violence civil protection order against Elizabeth Heindell on behalf of E.H. This matter was assigned case No. 09 DV 000002. In addition, Hoyt filed a petition for a domestic-violence civil protection order against Richard Heindell on behalf of E.H. This matter was assigned case No. 09 DV 000003. These matters were not specifically consolidated at the trial court level; however, the pleadings in both cases were substantially similar. For purposes of this appeal, we will generally refer to the pleadings in a consolidated fashion, while noting any differences between the two cases.

{¶ 8} After considering Hoyt's petitions, the trial court, pursuant to R.C. 3113.31, issued ex parte domestic-violence civil protection orders against the Heindells. These orders prohibited the Heindells from several activities, including (1) abusing, harming, or threatening E.H., (2) entering E.H.'s school or the school grounds, (3) being within 500 feet of E.H. (except for visitation by Elizabeth Heindell as provided in the ex parte order), (4) having contact with E.H. (except for visitation by Elizabeth Heindell as provided in the order), (5) using or possessing deadly weapons, and (6) using or possessing illegal drugs or alcoholic beverages. The ex parte orders temporarily allocated parental rights and responsibilities for E.H. to Hoyt. In relation to Elizabeth Heindell, the ex parte order granted her weekend visitation with E.H. pursuant to the court's standard order. However, Elizabeth Heindell was not permitted to transport E.H.; instead, she was required to have a licensed, insured driver who had not consumed alcohol within the prior 24 hours transport him. In relation to Richard Heindell, the ex parte order did not provide for visitation with E.H.

{¶ 9} In March 2009, in relation to Elizabeth Heindell, Hoyt filed a motion to show cause as to why she should not be held in contempt of the court's ex parte order. The motion alleged that Elizabeth Heindell violated the order by drinking alcohol and by going to E.H.'s school.

{¶ 10} On April 27, 2009, the matter came on for a full hearing in front of the domestic-relations magistrate. At the hearing, several witnesses testified, including the Heindells, Hoyt, Patrolman Lachey, and E.H. The majority of the testimony concerned the incident on January 4, 2009. In addition, E.H. testified about other instances when Richard Heindell had consumed beer while driving. E.H.'s testimony was quite specific, as he described that Richard Heindell would

hold the beer between his legs or place it in the cup holder of the vehicle. Further, he stated that Richard Heindell referred to the beer he drinks while driving as "road pop." Also, he testified that Richard Heindell would place the empty beer cans in the center console of the vehicle. E.H. testified that Elizabeth Heindell sometimes drank beer in the vehicle while riding with Richard Heindell.

{¶ 11} Following the hearing, the magistrate issued decisions recommending that civil protection orders be issued against the Heindells. Further, while the magistrate found that Elizabeth Heindell violated the ex parte order by drinking alcohol and by going to E.H.'s school, she did not recommend a finding of contempt.

{¶ 12} The Heindells filed objections to the magistrate's decisions. Also, with leave of court, they filed supplemental objections to the magistrate's decisions after the transcript was completed. The Heindells objected to the magistrate's decisions on the basis that there was insufficient evidence presented to support the issuance of civil protection orders.

{¶ 13} The trial court overruled the Heindells' objections to the magistrate's decisions and adopted the magistrate's decisions. The trial court issued domestic-violence civil protection orders against the Heindells. These orders prohibited the Heindells from several activities, including (1) abusing, harming, or threatening E.H., (2) entering E.H.'s school or the school grounds, (3) being within 500 feet of E.H., (4) having contact with E.H., and (5) using or possessing deadly weapons. In relation to Elizabeth Heindell, the civil protection order prohibited her from using or possessing illegal drugs or alcoholic beverages. As it pertained to Richard Heindell, the civil protection order prohibited him from using or possessing illegal drugs; however, the standard language restricting the use or possession of alcoholic beverages was interlined. One of the civil protection orders designated Hoyt as the temporary residential parent and legal custodian of E.H. In relation to Elizabeth Heindell, the civil protection order granted her visitation pursuant to the court's standard order. Richard Heindell was permitted to accompany Elizabeth Heindell to the visitations, so long as they remained married. The Heindells' visitation with E.H. was ordered to take place at the home of E.H.'s maternal grandmother or at the Crossroads Center in Mentor, Ohio. The civil protection orders prohibited the Heindells from transporting E.H.

{¶ 14} Elizabeth Heindell has filed a notice of appeal from the trial court's judgment entry in case No. 09 CV 000002. On appeal, this matter was assigned case No. 2009–L–152. Also, Richard Heindell has filed a notice of appeal from the trial court's judgment entry in case No. 09 CV 000003. On appeal, this

matter was assigned case No. 2009–L–151. On appeal, these cases have been consolidated for purposes of briefing and disposition.

{¶ 15} The Heindells raise five assignments of error. We will address their assigned errors out of numerical order. The Heindells' fourth assignment of error states:

{¶ 16} "The Court's award of custody to Appellee is void [for] lack of jurisdiction."

{¶ 17} The Heindells assert that the domestic-relations court did not have jurisdiction to make a custody determination, because there was a custody proceeding pending in the juvenile court.

{¶ 18} The domestic-relations court issued the civil protection orders pursuant to R.C. 3113.31, which provides:

{¶ 19} "(E)(1) After an ex parte or full hearing, the court may grant any protection order, with or without bond, or approve any consent agreement to bring about a cessation of domestic violence against the family or household members. The order or agreement may:

{¶ 20} " * * *

{¶ 21} "(d) Temporarily allocate parental rights and responsibilities for the care of, or establish temporary parenting time rights with regard to, minor children, *if no other court has determined, or is determining, the allocation of parental rights and responsibilities for the minor children or parenting time rights.*" (Emphasis added.)

{¶ 22} Accordingly, pursuant to the plain language of this statute, the domestic-relations court did not have authority to make an allocation of parental rights and responsibilities, since the Juvenile Division of the Lake County Court of Common Pleas had previously determined the custody issues pertaining to E.H.

{¶ 23} In addition, the Supreme Court of Ohio has "recognized 'the bedrock proposition that once a court of competent jurisdiction has begun the task of deciding the long-term fate of a child, all other courts are to refrain from exercising jurisdiction over that matter.'" *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, at ¶ 10, quoting *In re Adoption of Asente* (2000), 90 Ohio St.3d 91, 92, 734 N.E.2d 1224.

{¶ 24} Again, the juvenile court was exercising jurisdiction over the custody matters pertaining to E.H. Further, the domestic-relations court was aware of this, as there are multiple references to the juvenile-court proceedings in the record, including references in the initial petitions for civil protection orders. Thus, the domestic-relations court erred by allocating parental rights and responsibilities in relation to E.H.

{¶ 25} The Supreme Court of Ohio has recognized that there are two types of jurisdiction—"subject-matter jurisdiction and jurisdiction over the particular case." *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, at ¶ 10, citing *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, at ¶ 12. "Distinguishing between these concepts is important because ' " '[i]t is only when the trial court lacks subject matter jurisdiction that its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable.' " ' " Id., quoting *Pratts v. Hurley* at ¶ 12, quoting *State v. Parker*, 95 Ohio St.3d 524, 2002-Ohio-2833, 769 N.E.2d 846, ¶ 22 (Cook, J., dissenting), quoting *State v. Swiger* (1998), 125 Ohio App.3d 456, 462, 708 N.E.2d 1033. Generally, subject-matter jurisdiction is the trial court's power to hear the merits of a certain category of case. Id. at ¶ 11. However, jurisdiction over the particular case pertains to the trial court's authority to determine the merits of a specific case within a general category of cases it is permitted to hear. Id. at ¶ 12.

{¶ 26} Generally, the domestic-relations court is permitted to temporarily allocate parental rights and parenting time as part of a domestic-relations protection order. R.C. 3113.31(E)(1)(d). Thus, the domestic-relations court had subject-matter jurisdiction over this matter. However, the domestic-relations court did not have jurisdiction over the particular case. As previously stated, the domestic-relations court could not make custody determinations, because the juvenile court had already determined the allocation of parental rights and responsibilities in relation to E.H. R.C. 3113.31(E)(1)(d). Thus, the judgment of the domestic-relations court is "voidable." *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, at ¶ 12.

{¶ 27} As Hoyt notes, the Heindells did not object to the jurisdiction of the domestic-relations court to make custody determinations at the trial-court level. They did not raise this issue in their objections to the magistrate's decisions. Thus, we decline to declare the domestic-relations court's protection orders void. See, e.g., *In re J.J.* at ¶ 15.

{¶ 28} A party's failure to file objections to a magistrate's decision waives all but plain error. See Civ.R. 53(D)(3)(b)(iv). This standard of review was averred by the Supreme Court of Ohio in *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus:

{¶ 29} "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."

{¶ 30} In this matter, we find that plain error exists because the domestic-relations court did not have statutory authority to award custody of E.H. to Hoyt. While we are aware of the limited use of the plain-error doctrine in civil cases, we believe this matter constitutes an "exceptional circumstance," which warrants application of the doctrine. Here, the domestic-relations court changed the custody placement of a minor child even though a court of competent jurisdiction had previously determined "the allocation of parental rights and responsibilities." This is not permitted pursuant to R.C. 3113.31(E)(1)(d). Accordingly, we reverse the orders of the domestic-relations court to the extent that they allocate parental rights and responsibilities and determine custody.

{¶ 31} Our decision should not be construed to eliminate all authority of domestic-relations courts. A domestic-relations court is permitted to make emergency decisions, on an interim basis, to protect children from imminently dangerous situations. However, such determinations should remain in effect only until such time as the court that originally exercised jurisdiction over the custody issue can properly review the matter.

{¶ 32} The Heindells' fourth assignment of error has merit to the extent indicated.

{¶ 33} The Heindells' first three assignments of error are:

{¶ 34} "[1] The presence of open containers and children within a vehicle is insufficient as a matter of law to constitute 'domestic violence' within Section 3113.31(A) of the Ohio Revised Code.

{¶ 35} "[2] In the absence of any proof of impairment, consumption of an alcoholic beverage while driving does not constitute a violation of R.C. 2919.22(A).

{¶ 36} "[3] Petitioner for a civil protection order must demonstrate fear of present or imminent harm, evidence of past acts, without more, and possible future acts are insufficient to support a domestic violence civil protection order."

{¶ 37} The Heindells' first three assigned errors all concern sufficiency of the evidence presented concerning the trial court's issuance of the civil protection orders. Thus, we will address these assigned errors in a consolidated analysis.

{¶ 38} "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton* (1997), 79 Ohio St.3d 34, 679 N.E.2d 672, paragraph two of the syllabus, citing R.C. 3113.31(D).

{¶ 39} The decision to issue a civil protection order lies within the sound discretion of the trial court. *Maglionico v. Maglionico* (Nov. 9, 2001), 11th Dist. No. 2000–P–0115, 2001 WL 1401978, at *1–2, citing *Deacon v. Landers* (1990), 68

Ohio App.3d 26, 31, 587 N.E.2d 395, and *Dybo v. Dybo* (Nov. 5, 1999), 11th Dist. No. 98–G–2155, 1999 WL 1073781, at *2–3. Absent an abuse of that discretion, a reviewing court will not disturb the trial court's judgment. Id. An abuse of discretion is the trial court's " 'failure to exercise sound, reasonable, and legal decision-making.' " *State v. Beechler*, 2d Dist. No. 09–CA–54, 2010-Ohio-1900, 2010 WL 1731784, at ¶ 62, quoting Black's Law Dictionary (8th Ed.Rev.2004) 11.

{¶ 40} In this matter, the trial court issued the domestic-violence civil protection orders pursuant to R.C. 3113.31, which provides:

{¶ 41} "(1) 'Domestic violence' means the occurrence of one or more of the following acts against a family or household member:

{¶ 42} "(a) Attempting to cause or recklessly causing bodily injury;

{¶ 43} "(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;

{¶ 44} "(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

{¶ 45} "(d) Committing a sexually oriented offense."

{¶ 46} If a court finds that the petitioner is a victim of domestic violence, it may issue a protective order. See R.C. 3113.31(E)(1). In this matter, the trial court found that E.H. was a victim of domestic violence under subsection (c) of R.C. 3113.31.

{¶ 47} Pursuant to R.C. 2151.031(B), the term "abused child" is defined to include a child who "[i]s endangered as defined in section 2919.22 of the Revised Code, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child."

{¶ 48} R.C. 2919.22 provides:

{¶ 49} "(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *.

{¶ 50} " * * *

{¶ 51} "(C)(1) No person shall operate a vehicle, streetcar, or trackless trolley within this state in violation of division (A) of section 4511.19 of the Revised Code when one or more children under eighteen years of age are in the vehicle, streetcar, or trackless trolley."

{¶ 52} The Heindells argue that there was no evidence presented that Richard Heindell was intoxicated on January 4, 2009, when they arrived to pick up E.H. Further, they argue, since there was no evidence presented regarding intoxi-

cation, the civil protection order was issued based on an open-container violation, which is not permissible under R.C. 2919.22(C)(1). The Heindells are focusing their argument solely on the events of January 4, 2009. The magistrate specifically noted that her decision was not limited to the events of that evening but, rather, included the Heindells' ongoing conduct of consuming beer while operating a motor vehicle with E.H. in the vehicle.

{¶ 53} Moreover, while there may have been insufficient evidence to support a finding that the Heindells endangered E.H. pursuant to subsection (C) of R.C. 2919.22, there was sufficient evidence presented to support a finding that they endangered E.H. pursuant to subsection (A) of R.C. 2919.22, by creating a substantial risk to the health or safety of E.H. by Richard Heindell's drinking beer while operating a motor vehicle and Elizabeth Heindell's permitting him to do so.

{¶ 54} E.H. testified that Richard Heindell consumed beer on multiple occasions while driving the vehicle. According to E.H., Richard Heindell referred to the beer as "road pop." E.H. described the way Richard Heindell would hold the beer—either placing it between his legs or in the cup holder. Further, E.H. explained that Richard Heindell would place the empty beer cans in the compartment located in the center console. Also, E.H. testified that Elizabeth Heindell would sometimes drink beer with Richard Heindell when he was driving the vehicle with E.H. in it.

{¶ 55} The magistrate and the trial court both stated that they found E.H.'s testimony credible. E.H.'s testimony established that the Heindells were consuming beer in a moving motor vehicle. Such conduct is a violation of R.C. 4301.62(B)(4), which prohibits possession of an open container of beer in a motor vehicle, as well as R.C. 4301.64, which prohibits consuming beer in a motor vehicle. The Heindells, through this ongoing, blatant disrespect for the law, created a substantial risk to the safety of E.H.

{¶ 56} The Heindells contend that there was no "substantial" risk of harm created by their actions. Specifically, they argue that "[t]here was no evidence in the record [that drinking] a single beer while driving constitutes a 'strong possibility' that injury would occur." First, we note that the record suggests that Richard Heindell consumed more than a "single" beer on some of the occasions when he was drinking beer while driving. E.H. testified that Richard Heindell had a habit of placing the empty *cans* in the center console. Then, on the night in question, four empty beer cans were found in the center console. Further, we note that the magistrate specifically found Richard Heindell's explanation about how the beer cans got in the center console not to be credible.[3] Second, as the

---

3. Richard Heindell testified that he had been drinking beer in his driveway with his adult son a few days before the incident in question and simply forgot to clean the cans out of the center console.

Heindells note in their brief, "society is aware that alcohol consumption and driving may lead to unfortunate results." In this matter, the Heindells created a substantial risk to the health or safety of E.H. by Richard Heindell's operation of a motor vehicle while consuming alcohol, which occurred on multiple occasions. We note that not only were the Heindells placing E.H. in direct harm by their actions, they were also placing him in indirect harm, by implicitly telling a teenager that it is acceptable for someone to consume beer while driving a motor vehicle.

{¶ 57} The Heindells contend that there was no evidence they acted recklessly. The Supreme Court of Ohio has held that recklessly is the requisite mental state for endangering children in violation of R.C. 2919.22(A). See *State v. McGee* (1997), 79 Ohio St.3d 193, 195, 680 N.E.2d 975.

{¶ 58} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶ 59} In this matter, there was evidence presented that Richard Heindell consumed beer, while driving a motor vehicle, with E.H. in the vehicle, and that Elizabeth Heindell approved or allowed this behavior. In addition, there was evidence presented that this occurred on multiple occasions. Therefore, we conclude that there was sufficient evidence presented that the Heindells acted recklessly.

{¶ 60} Finally, the Heindells argue that there was no evidence presented at the hearing that E.H. "was ever in fear of Appellants drinking at home, or while driving." We disagree. At the hearing, E.H. testified that he notified Hoyt about the beer can in the Heindells' vehicle on January 4, 2009, because Hoyt told him "that it could be dangerous, and [he] learned in school that drinking * * * can blur your vision and lead to a car crash." E.H. specifically testified that he raised the issue of Richard Heindell's consuming alcohol while driving as a result of his knowledge that drinking and driving can "lead to a car crash." At the very least, this is circumstantial evidence that E.H. had a reasonable fear about the Heindells' actions.[4]

---

4. The Supreme Court of Ohio has held that " '[c]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof.' " *State v. Biros* (1997), 78 Ohio St.3d 426, 447, 678 N.E.2d 891, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus.

{¶ 61} In the case sub judice, there was sufficient evidence presented that the Heindells created a substantial risk to the health or safety of E.H. by on multiple occasions placing him in a motor vehicle in which the driver was consuming beer. While the Heindells have cited various criminal cases in support of their arguments, we note that as this matter concerns the issuance of civil protection orders, the petitioner needed only to show by a preponderance of the evidence that E.H. was in danger of domestic violence and our review is limited to whether the trial court abused its discretion.

{¶ 62} Upon reviewing the entire record in this matter, we conclude that the trial court did not abuse its discretion by issuing the civil protection orders.

{¶ 63} The Heindells' first three assignments of error are without merit.

{¶ 64} The Heindells' fifth assignment of error states:

{¶ 65} "The trial court abused its discretion in issuing an order that modified a previous order of custody by a Juvenile Court."

{¶ 66} In reviewing the Heindells' final assignment of error, we address the restrictions placed on the Heindells in light of our prior conclusion that the trial court erred by making a custody determination as part of the civil protection orders.

{¶ 67} In issuing a civil protection order, the trial court may add restrictions, provided they are "equitable and fair." R.C. 3113.31(E)(1)(h). "While R.C. 3113.31 affords trial courts discretion in imposing restrictions corresponding to a [civil protection order], this discretion is not limitless." *Maag v. Maag* (Mar. 28, 2002), 3d Dist. No. 16–01–16, 2002 WL 468585. In another case involving the issuance of a civil protection order, this court held:

{¶ 68} "In determining the reasonableness of a restriction of a civil protection order, the Third Appellate District has adopted a standard similar to that used in determining whether a condition of probation is unduly restrictive. [*Maag v. Maag.*] Thus, 'restrictions must bear a sufficient nexus to the conduct that the trial court is attempting to prevent.' [Id.]" *Sistek v. Gredence*, 11th Dist. No. 2005–L–212, 2006-Ohio-4169, 2006 WL 2337189, at ¶ 36.

{¶ 69} In this matter, there was evidence presented at the hearing that Richard Heindell had sometimes consumed beer while driving a motor vehicle in which E.H. was a passenger and that Elizabeth Heindell permitted this behavior. Accordingly, the trial court's restrictions should have been limited to preventing this conduct.

{¶ 70} Some of the trial court's restrictions were related to the conduct. The trial court's civil protection order stated, "Under no circumstances, shall [Richard Heindell] transport [E.H.]." Likewise, Elizabeth Heindell was prohibited from

transporting E.H. In addition, Elizabeth Heindell was prohibited from using or possessing illegal drugs or alcohol.

{¶ 71} However, some of the trial court's restrictions are clearly unrelated to the offending conduct. The Heindells were prohibited from entering E.H.'s school or the school grounds. There was no evidence presented showing any nexus between the detrimental conduct (Richard Heindell's operating a motor vehicle while drinking beer with E.H. in the vehicle) and the Heindell's going to E.H.'s school. Also, the Heindells were prohibited from being within 500 feet of E.H. and from having "contact" with E.H. Presumably, the restrictions against having contact with E.H. did not apply during the Heindells' visitation with E.H. That being so, as worded in the civil protection order, the Heindells could not be within 500 feet of E.H. if they encountered him at a public place. As such, the Heindells were essentially prohibited from attending any extracurricular activities in which E.H. may be involved or interacting with him in any manner outside the prescribed visitation period. These restrictions do not have a significant nexus to the conduct the court was trying to prevent. Thus, they are unreasonable.

{¶ 72} There was no evidence presented at the hearing suggesting that Richard or Elizabeth threatened, physically abused, or otherwise harmed E.H., in any way, when E.H. was present in the Heindells' home. To the contrary, the evidence suggested that E.H. lived safely with the Heindells for the majority of his life, as Elizabeth Heindell was designated the primary residential parent by the juvenile court.

{¶ 73} The only evidence presented pertaining to the safety of E.H. was related to the consumption of alcohol in motor vehicles. Accordingly, the trial court's civil protection order should have been limited to restrictions designed to prevent that conduct.

{¶ 74} The Heindells' fifth assignment of error has merit to the extent indicated.

{¶ 75} The judgments of the Domestic Relations Division of the Lake County Court of Common Pleas are affirmed in part and reversed in part. The civil protection orders themselves are affirmed. However, the custody and visitation determinations (provisions 12 and 13) contained in the orders are reversed. In addition, provisions five, six, and seven—pertaining to the restrictions against contact with E.H. and preventing the Heindells from entering E.H.'s school—are reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion. Specifically, the domestic-relations court is to eliminate the offending provisions as restrictions. The parties and the domestic-

relations court are specifically instructed to defer any and all custody determinations to the Juvenile Division of the Lake County Court of Common Pleas.

Judgment accordingly.

Rice, J., concurs.

O'Toole, J., concurs in part and dissents in part.

Colleen Mary O'Toole, Judge, concurring in part and dissenting in part.

{¶ 76} I concur in the majority's decision to reverse the judgment of the trial court and remand the matter for further proceedings. However, I dissent with respect to affirming the civil protection orders.

{¶ 77} This writer does not condone the behavior of appellants. However, there is insufficient evidence, based upon the elements of domestic violence, to justify a civil protection order, as the acts of appellants in this case do not satisfy the elements under R.C. 3113.31.

{¶ 78} R.C. 3113.31(A) provides:

{¶ 79} "(A) As used in this section:

{¶ 80} "(1) 'Domestic violence' means the occurrence of one or more of the following acts against a family or household member:

{¶ 81} "(a) Attempting to cause or recklessly causing bodily injury;

{¶ 82} "(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 (2903.21.1) or 2911.211 (2911.21.1) of the Revised Code;

{¶ 83} "(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 (2151.03.1) of the Revised Code;

{¶ 84} "(d) Committing a sexually oriented offense."

{¶ 85} An open-container violation is insufficient, standing alone, to justify a civil protection order. In order to justify a civil protection order in this case, any of the foregoing elements of domestic violence must have been present. However, the record before this court does not establish the presence of any element of domestic violence. The facts simply reveal the following: the child never got in the car; the parties called the police; the officer was called to the scene and did an investigation; and no citation was issued for OVI, child endangering, or domestic violence.

{¶ 86} A violation of the open-container statute, a minor misdemeanor, simply does not rise to the level of "recklessness" necessary to sustain either domestic

violence under R.C. 3113.31(A) or child endangering pursuant to R.C. 2919.22(A), which involves a "substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." See R.C. 4301.62 and 4301.64. There is no evidence that appellants consumed alcohol while driving on the date at issue, nor is there sufficient evidence of impairment. There is also no evidence that the child was ever harmed by appellants, nor is there any evidence of dependency, neglect, or abuse.

{¶ 87} R.C. 4301.64 provides that "[n]o person shall consume any beer or intoxicating liquor in a motor vehicle." However, the record here does not contain evidence of consumption. A violation of R.C. 4301.64, without more, does not constitute child endangering pursuant to R.C. 2919.22, nor does it constitute domestic violence under R.C. 3113.31(A) to justify a civil protection order. The evidence was insufficient to establish that alcohol affected Mr. Heindell's driving or that the child was put in danger or risk of danger. The consumption of alcohol is, in and of itself, insufficient to support a civil protection order, as the officer called to the scene was tasked with investigating.

{¶ 88} In addition, because the juvenile court had already determined parental rights and responsibilities, the domestic-relations court lacked subject-matter jurisdiction over the issue, making its order of temporary custody void for lack of jurisdiction. See *In re Poling* (1992), 64 Ohio St.3d 211, 213–218, 594 N.E.2d 589. The domestic-relations court is required to transfer incidents of alleged child abuse to the juvenile court for determination and adjudication. See R.C. 2151.23 and 3109.06. It is apparent that this case was an additional effort to get custody of the child during an ugly and contentious domestic-custody battle. The movant chose not to file an emergency motion to suspend visitation in the court that had jurisdiction over the custody of the minor child and the court most familiar with the family's issues, which is the purpose of original jurisdiction in custody disputes. The primary and exclusive jurisdiction is in the juvenile court. The effect was an erroneous decision that has the effect of prolonging the custody battle at the child's emotional expense.

{¶ 89} For the foregoing reasons, I concur in part and dissent in part.