[Cite as *Nicola v. Nicola*, 2015-Ohio-4017.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| MIRANDA N. NICOLA, | : | **O P I N I O N** |
| Petitioner-Appellant, | : | |
| - vs - | : | **CASE NO. 2014-L-057** |
| EMAD NICOLA, | : | |
| Respondent-Appellee. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 14 DV 000048.

Judgment: Affirmed.

*Mary E. Santez,* Mary Santez, Esq., LLC, 1497 East 361st Street, Suite #3, Eastlake, OH 44095 (For Petitioner-Appellant).

*Hans C. Kuenzi,* Hans C. Kuenzi Co., L.P.A., Skylight Office Tower, 1660 West Second Street, Suite 410, Cleveland, OH 44113 (For Respondent-Appellee).

DIANE V. GRENDELL, J.

{¶1} Petitioner-appellant, Miranda N. Nicola, appeals the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, dismissing her Petition for Domestic Violence Civil Protection Order (R.C. 3113.31). The issue before this court is whether a trial court may properly exclude testimony regarding acts of domestic violence not alleged in the Petition. For the following reasons, we affirm the decision of the court below.

{¶2} On March 27, 2014, Miranda filed a Petition for Domestic Violence Civil Protection Order (R.C. 3113.31) against respondent-appellee, Emad Nicola, on behalf of her children, Dl. and Da. The Petition alleged that Emad twisted Dl.'s arm until a "crack" was heard and gave him "knuckles" on his head. The Petition further alleged that Emad is "rough" with the children and drinks a lot when he is with them.

{¶3} On the same day, the domestic relations court issued a Domestic Violence Civil Protection Order (CPO) *Ex Parte*.

{¶4} On May 5, 2014, a full hearing on the Petition was held before a magistrate. The following testimony was given:

{¶5} Officer Adam Clark of the Eastlake Police Department testified that he took statements from Miranda and the detective working the case regarding the alleged incident to forward to the prosecutor's office. No charges were filed against Emad.

{¶6} Miranda testified that she married Emad in 2004 and that they separated in 2011. Two children were born as issue of the marriage. Dl. (the son) was born in 2005 and Da. (the daughter) was born in 2006.

{¶7} On the weekend of March 21, 2014, Emad exercised court ordered visitation with the children. He returned the children around 5:30 p.m., on Sunday, March 23. Immediately, Miranda noticed that Dl. was crying – "very upset" – and complaining about his head and right arm. Miranda took him to the emergency room. Dl. was ordered to keep his arm in a sling for two weeks.

{¶8} Gaylee Hughes, an instructor at Coleridge Preschool and Daycare, testified that she saw and spoke with Dl. while his arm was in the sling and described his mood as "angry" and "sad."

{¶9} Dl. testified that, on the Saturday of the weekend in question, Emad "grabbed me by the wrist here, pulled it and twisted my arm." Dl. acknowledged that Emad will physically intervene when he argues with his sister, but that this incident was unprovoked. Later that day, Emad made comments about Dl.'s weight. Dl. became angry and pushed Emad, who started "knuckling" or "smacking" Dl.'s head with his fists. Dl. started to cry and went to his room for the evening.

{¶10} When Dl. complained about his arm on Sunday, Emad told him, "Don't be a baby."

{¶11} Dl. testified that Emad purposely tries to hurt him because there is an incident every time he visits him.

{¶12} Emad testified Dl. had complained about his elbow hurting on Friday of the weekend in question. The next day, Dl. began punching him and grabbed him in a "bear hug." Dl. would not stop, so Emad "gave him the knuckle head." Dl. released him, but pushed him onto a bed and began punching again. Emad grabbed Dl.'s right hand. Dl. turned and "pulled his arm out." Afterwards, Dl. claimed Emad hurt him. Emad thought Dl. might have been angry because he asked him to take a shower, but was uncertain as to what motivated Dl.'s conduct.

{¶13} On Sunday, Emad did not notice anything wrong with Dl.'s arm.

{¶14} On May 9, 2014, a Magistrate's Order was issued, dismissing and terminating the Petition and *Ex Parte* CPO. The Magistrate's Order was signed by the domestic relations court judge as well as the magistrate.

{¶15} On June 9, 2014, Miranda filed a Notice of Appeal.

{¶16} On July 30, 2014, this court remanded the case to the domestic relations court "for the sole purpose of issuing an order, separate and apart from the magistrate's decision, which sets forth the final ruling of the court which disposes of the underlying case."

{¶17} On August 6, 2014, the domestic relations court issued a Judgment Entry in which it adopted the May 9, 2014 Magistrate's Order.

{¶18} On appeal, Miranda raises the following assignment of error:

{¶19} "[1.] The trial court's decision to dismiss and terminate Petitioner-Appellant's Petition for Domestic Violence Civil Protection Order and Ex Parte Civil Protection Order constitutes an abuse of discretion because, not only did the trial court erroneously exclude relevant and admissible evidence of past acts of domestic violence, but Petitioner-Appellant and the minor child [Dl.] testified consistently that it was apparent that [Dl.'s] arm was broken by Respondent-Appellee, an act which clearly constitutes domestic violence as it is defined at law."

{¶20} "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672 (1997), paragraph two of the syllabus.

{¶21} The petition shall contain or state:

> (1)    An allegation that the respondent engaged in domestic violence against a family or household member of the respondent, including a description of the nature and extent of the domestic violence;

4

(2)     The relationship of the respondent to the petitioner, and to the victim if other than the petitioner;

(3)     A request for relief under this section.

R.C. 3113.31(C).

{¶22} "Domestic violence" encompasses the following acts committed against a family or household member: "[a]ttempting to cause or recklessly causing bodily injury," "[p]lacing another person by the threat of force in fear of imminent serious physical harm," and "[c]ommitting any act with respect to a child that would result in the child being an abused child." R.C. 3113.31(A)(1)(a), (b), and (c).

{¶23} "The decision to issue a civil protection order lies within the sound discretion of the trial court." *Hoyt v. Heindell*, 191 Ohio App.3d 373, 2010-Ohio-6058, 946 N.E.2d 258, ¶ 39 (cases cited). Similarly, "a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991).

{¶24} Miranda's first argument is that neither she nor Dl. were "permitted to testify at length to incidents of past domestic violence" or even "to their fear of [Emad]." Appellant's brief at 6.

{¶25} With respect to Miranda, the magistrate limited her testimony to those facts related to the allegations raised in the Petition. At the start of the hearing, the magistrate raised the following "preliminary matter":

B]ased on Petitioner's opening statement, there are specific allegations * * * of domestic violence and the evidence * * * [will] be

5

limited to what is alleged. * * * Mr. Nicola is entitled to have notice of what he has to defend and I just want to bring that up prior to testimony being presented, because in my review of the allegations, there are specific allegations over a relatively small period of time and that's what Mr. Nicola is going to have to defend.

**{¶26}** During the course of Miranda's testimony, the magistrate sustained an objection when she began to explain that she filed for divorce because Emad was "abusing" and "hitting" her.

**{¶27}** The magistrate also sustained an objection when Miranda began to testify "we are afraid –," admonishing her to testify to facts related to the allegations of the Petition. The magistrate ultimately allowed her to testify that she feels the children are unsafe in Emad's custody.

**{¶28}** We find no abuse of discretion in the magistrate's rulings. The Petition did not allege that any acts of domestic violence were ever committed against Miranda but, rather described a specific incident of domestic violence against DI.

**{¶29}** With respect to DI., the magistrate placed no substantive limits on the scope of his testimony. DI. testified that he fears for his safety when he visits Emad "because every time I go there, he abuses me." When DI. was asked to elaborate, counsel for Emad objected but was overruled. The magistrate stated: "He can say what he wants." DI. continued: "Every time that I go there, he like grabs me, does something physical to me. * * * I think he's purposely trying to hurt me."

6

{¶30} Miranda further contends that there was "competent and credible evidence going to each of the essential elements of the petition." Appellant's brief at 7. We disagree.

{¶31} Emad's testimony as to how Dl.'s arm was injured does not support a finding that Emad purposely or recklessly injured his son. The prerogative of evaluating witness credibility and deciding between conflicting testimony lies with the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The magistrate's decision to credit Emad's testimony does not rise to the level of an abuse of discretion.

{¶32} The sole assignment of error is without merit.

{¶33} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, dismissing Miranda's Petition for Domestic Violence Civil Protection Order, is affirmed. Costs to be taxed against appellant.


CYNTHIA WESTCOTT RICE, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.


_____


COLLEEN MARY O'TOOLE, J., dissents, with a Dissenting Opinion.

{¶34} I respectfully dissent from my learned colleagues. I find merit in Ms. Nicola's first assignment of error: she should not have been prevented from testifying

7

regarding prior instances of alleged domestic violence directed against her or the children by Mr. Nicola.

{¶35} "'Threats of violence will constitute "domestic violence" if the fear resulting from those threats is reasonable.' *Rhodes v. Gunter*, 9th Dist. Lorain Nos. 02CA008156 and 02CA008157, 2003-Ohio-2342, ¶4. 'Reasonableness is determined by referencing the petitioner's history with the respondent.' *Id.*" *Kuhn v. Kuhn*, 11th Dist. Lake No. 2012-L-099, 2013-Ohio-5807, ¶31. And the legislative purpose of the domestic violence statute is best served when the trial court considers all of the relevant evidence. *Shockey v. Shockey*, 5th Dist. Delaware No. 08CAE070043, 2008-Ohio-6797, ¶20.

{¶36} In this case, while the facts set forth in the petition all referred to the injury of D.I's arm, the petition was filed by Ms. Nicola on behalf of both children. Evidence of prior acts of violence toward a petitioner or other family members is admissible to prove that a petitioner and his or her children are at risk of harm. *Parrish v. Parrish*, 95 Ohio St.3d 1201, 1207-1208 (2002). If, in fact, there was some evidence of prior acts of domestic violence, it was relevant, and that evidence should have been elicited.