[Cite as *Tredenary v. Fritz*, 2017-Ohio-8632.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| ANTOINETTE TREDENARY, et al., | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2017-L-045** |
| DANIEL FRITZ, | : | |
| Defendant-Appellee. | : | |

Appeal from the Lake County Court of Common Pleas, Domestic Relations Division, Case No. 2016 DV 000181.

Judgment: Affirmed.

*David M. Lynch,* 333 Babbitt Road, Suite 333, Euclid, OH 44123 (For Plaintiff-Appellant).

*Elaine Tassi,* 34955 Chardon Road, Willoughby Hills, OH 44094 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Antoinette Tredenary, appeals the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, denying her petition for a domestic violence civil protection order against her former husband, appellee, Daniel Fritz. At issue is whether the trial court abused its discretion in denying the petition. For the reasons that follow, we affirm.

{¶2} While the parties were married, they adopted D.T., the biological son of Antoinette's brother, Dominic Tredenary. The parties were divorced in Lake County in

2011.  Daniel was granted legal custody of D.T. and Antoinette was given visitation.  At the time of the hearing in this case, D.T. was 12 years old.

{¶3}   On September 6, 2016, Antoinette filed a petition for a domestic violence civil protection order for herself and D.T. against Daniel.  In support, she alleged Daniel committed an act of domestic violence against her on August 23, 2016.  The magistrate granted an ex parte protection order, but only in favor of her, not D.T.  The case came on for a full hearing protection order.

{¶4}   Dominic testified he lives on the west side of Cleveland.  He said that on August 22, 2016, D.T. asked him to come with him and Daniel that evening to the Captains baseball game at Eastlake Park.  Antoinette picked up Dominic because his driver's license had expired, and dropped him off at Daniel's house in Willoughby at about 7:00 p.m.  Before leaving for the game, Dominic had a beer at Daniel's house.

{¶5}   Dominic said that he and D.T. walked around the stadium most of the game, while Daniel watched the game from his stadium seat.   D.T. is a hyperactive child with autism.  Dominic said it was Dollar Beer Night.  Daniel gave D.T. $10 to $12 for refreshments, and, according to Dominic, D.T. used it to buy him beers throughout the game.  Dominic said that, by the end of the game, he was "buzzed."  Daniel said that Dominic had ten to 12 beers at the stadium; that he was not walking steadily; and that his speech was slurred.

{¶6}   After the game, Dominic and D.T. met up with Daniel and they got in his car.  D.T. called Antoinette and asked her to come to Daniel's house to pick up Dominic.

{¶7}   Daniel said that when the three of them arrived at his house, he made them a pizza.  Dominic said that, while waiting for the pizza, he had a beer.  Daniel said

2

that D.T. was tired, hungry, and "acting out." He said Dominic and D.T. were arguing with each other and both were agitated, and he tried to calm them down.

{¶8} Daniel said that a short time later, Antoinette came over and they visited. D.T. was running around the house and, at about 10:30 p.m., he ran in the bathroom and started vomiting. It is at this point that the witnesses disagree as to what occurred.

{¶9} Dominic said Antoinette got up to check on D.T. She went in the hallway. Daniel, who was also in the hallway, put out his hand and said "no, he's okay." Antoinette insisted on going in the bathroom to check on him. The trial court noted that Dominic testified, "with much dramatic flair," that Daniel grabbed Antoinette, bounced her off the wall in the hallway, and threw her to the right.

{¶10} Antoinette's version was even more dramatic. She said D.T. started to cough and choke and ran into the bathroom. She went down the hallway to the bathroom to help him. She said Daniel was in the hall; said "no;" and slammed the door shut. She said she continued going forward and Daniel hit her on her shoulder "really hard" with an open hand; grasped her bra strap and shirt; and, while she was dangling in the air, threw her against the wall.

{¶11} Daniel testified that when he heard D.T. throwing up in the bathroom, he headed for the bathroom to help him. He said that as Antoinette was walking toward the bathroom, he put his arm under her upper arm and said, "Don't go in there" because D.T. was throwing up. He said, "I'll take care of it." Daniel said Antoinette became argumentative. He escorted her to the front door and said she should take Dominic home.

{¶12} Daniel went in the bathroom. He said that D.T. was vomiting, but not choking. Daniel said he patted D.T. on the back and, in a few minutes, he was fine.

3

Daniel said that D.T. often throws up when he is upset. D.T. then left the bathroom and Daniel cleaned up the floor.

{¶13} Daniel came out of the bathroom and again told Antoinette to take her brother home. Dominic said that things did not escalate any further. He said that when he left the house, he shook hands with Daniel and took another beer. Daniel said he thought the evening ended "on an amicable note." Daniel denied pushing Antoinette against the wall or any other violence.

{¶14} Dominic said that Antoinette did not go to the police station or to the hospital that night.

{¶15} Antoinette testified that on the following morning, August 23, 2016, she went to the Willoughby Police Station and made a police report against Daniel. She said the police noticed she was in pain and offered to get her an ambulance, but she refused. She said she waited so long to go to the police department because she was hoping Daniel would apologize, but he did not. She said she would not have gone to the police department if Daniel had just apologized.

{¶16} Antoinette said that at about 1:30 p.m. that day, she went to the hospital for treatment. She said the hospital gave her a sling, prescribed pain medication for her, and told her she had a shoulder strain. She admitted her discharge instructions told her to follow up with a doctor, but she said she never did and did not seek any further treatment.

{¶17} Willoughby Police Officer Kevin Rastall identified his police report, which stated that "Antoinette had no visible injuries to her shoulder." He testified he did not see any injuries on her shoulder. Officer Rastall said he later called Daniel and asked

4

him to come in for a written statement and he complied. Daniel was only charged with disorderly conduct, and the case was dismissed after the pretrial.

{¶18} The trial court issued a highly-detailed, four-page judgment entry concluding that Antoinette had failed to show by a preponderance of the evidence that a full hearing protection order should be issued and terminating the ex parte order. In its entry, the trial court made the following findings regarding the witnesses' credibility:

> {¶19} Based upon the foregoing testimony adduced during the hearing, the Court finds [Antoinette] and her brother's recollections of the August 22, 2016 incident differ significantly. It is undisputed by [Dominic's] own testimony he was drinking beer before the ball game, during the ball game, after the ball game, and on his way out of [Daniel's] house. His testimony is questionable as to what he saw or if he was even in a position to have witnessed anything. * * * In addition, the Court finds [Daniel's] testimony in the transcript credible.

{¶20} Antoinette appeals the trial court's judgment, asserting the following for her sole assignment of error:

{¶21} "The trial court committed error by ruling that the petitioner did not meet the burden of proof by a preponderance of the evidence in dismissing her protection order."

{¶22} While Antoinette's assignment of error suggests the court erred in finding she failed to present sufficient evidence, she argues that the court's judgment was against the manifest weight of the evidence because her and Dominic's testimony was more credible than Daniel's. She also argues the court erred in finding Dominic was not credible.

{¶23} This court has repeatedly held, "'[t]he decision to issue a civil protection order lies within the sound discretion of the trial court.'" *Nicola v. Nicola*, 11th Dist. Lake No. 2015-L-057, 2015-Ohio-4017, ¶23, quoting *Hoyt v. Heindell*, 191 Ohio App.3d 373,

5

2010-Ohio-6058, ¶39 (11th Dist.) (citing other cases so holding). "Absent an abuse of that discretion, a reviewing court will not disturb the trial court's judgment." *Hoyt, supra*.

**{¶24}** We note that other Ohio Appellate Districts apply the manifest-weight standard of review. *E.g.*, *Blocker v. Carron,* 5th Dist. Tuscarawas No. 10AP110042, 2011-Ohio-3673, ¶6. Still other Districts apply the abuse-of-discretion standard to challenges to the scope of the order and the manifest-weight standard to challenges to the issuance of the order. *E.g.*, *McBride v. McBride*, 12th Dist. Butler No. CA2011-03-061, 2012-Ohio-2146, ¶10.

**{¶25}** "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus. R.C. 3113.31(A)(1) defines "domestic violence" as: "(1) * * * the occurrence of one or more of the following acts against a family or household member: (a) Attempting to cause or recklessly causing bodily injury * * *."

**{¶26}** As noted above, Antoinette argues the court's judgment was against the manifest weight of the evidence. "[A]n appellate court will not reverse a judgment as being contrary to the weight of the evidence as long as there is some competent, credible evidence supporting the judgment." *In re Kangas*, 11th Dist. Ashtabula No. 2006-A-0084, 2007-Ohio-1921, ¶81. The manifest-weight standard of review is the same in a civil case as in a criminal case. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶17.

**{¶27}** When applying the manifest-weight standard of review, the reviewing court reviews the entire record, "'weighs the evidence and all reasonable inferences,

6

considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" *Eastley, supra*, ¶20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001). "The finder of fact is entitled to believe all, part, or none of the testimony of any witness." *River Oaks Homes, Inc. v. Twin Vinyl, Inc.*, 11th Dist. Lake No. 2007-L-117, 2008-Ohio-4301, ¶27.

{¶28} "Under the manifest weight standard of review, we are 'guided by a presumption' that the fact-finder's findings are correct." *Terry v. Kellstone, Inc.*, 6th Dist. Erie No. E-12-061, 2013-Ohio-4419, ¶13, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 79-80 (1984). *See also Eastley* at ¶21. We must make "'every reasonable presumption * * * in favor of the judgment and the finding of facts.'" *Id.*, quoting *Seasons Coal Co.* at 80, fn. 3. "'If the evidence is susceptible of more than one construction,'" we are "'bound to give it that interpretation which is consistent with the * * * judgment [and] most favorable to sustaining the * * * judgment.'" *Eastley, supra,* quoting *Seasons Coal Co., supra*.

{¶29} We note that Antoinette does not reference any inconsistencies in Daniel's testimony or give any other reasons to support her argument that she and Dominic were more credible than Daniel. Instead, she merely asks this court to compare her and Dominic's testimony to that of Daniel. However, it is not this court's function to comb the record to search for evidence supporting a party's argument.

{¶30} The witnesses obviously disagreed as to what happened in Daniel's home that night. In determining their credibility, the trial court was entitled to consider, among other things, that Dominic was drinking beer the entire evening so that, by his own

7

admission, by the time he left the park, he was buzzed. And, although Antoinette said Daniel hit her on her shoulder "real hard;" picked her up; and threw her against the wall, the officer saw no injury; Antoinette sought no follow-up treatment; and she said she would not have even gone to the police department if Daniel had apologized.

{¶31} In denying Antoinette's petition for a civil protection order, the trial court obviously found that Daniel was more credible than Antoinette and Dominic and that Antoinette failed to present any competent, credible evidence that Daniel attempted to cause or recklessly caused her bodily injury. The trial court was in the best position to view the witnesses and weigh the credibility of their testimony. We cannot say the trial court's finding was against the manifest weight of the evidence. Further, because the record contains evidence, which, if believed, supported the court's denial of Antoinette's petition, the court's judgment was not an abuse of discretion.

{¶32} For the reasons stated in this opinion, Antoinette's assignment of error is overruled. It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.

8