The STATE of Ohio, Appellee,

v.

AUSTIN, Appellant.

[Cite as *State v. Austin* (1998), 131 Ohio App.3d 329.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970166.

Decided May 15, 1998.

332

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Lynn C. O'Connor,* Assistant Prosecuting Attorney, for appellee.

*Stephen J. Wenke* and *Timothy R. Cutcher,* for appellant.

---

MARIANNA BROWN BETTMAN, Judge.

## PROCEDURAL POSTURE

Defendant-appellant, Richard Austin, appeals from his conviction and mandatory life sentence for the forcible rape of a person under the age of thirteen in violation of R.C. 2907.02(A)(1)(b) and (A)(2). He presents nine assignments of error for our review.

## FACTS

On August 5, 1996, Austin was watching his girlfriend Toni Flowers's four children while Flowers was at work. Austin told ten-year-old Randi Flowers to wash some dishes. She complained about this to Austin, who ordered her into the bedroom that he shared with her mother. Once in the bedroom, Randi claimed that Austin asked her a question, pushed her down onto the bed, pulled down her shorts, and raped her. When she began screaming, he struck her in the face. After the attack was over, Austin allegedly told Randi to take a bath and warned her not to tell anyone. Later the same day, she told her aunt that Austin had raped her. Her aunt told her mother and the police were called. Austin was arrested the same day. He was subsequently found guilty by a jury.

## ASSIGNMENTS OF ERROR

### A. *Miranda* warnings

After Austin was arrested, he was advised of his *Miranda* rights by police officer Lisa Thomas at the personal-crimes unit. Austin refused to sign a waiver of these rights and requested an attorney. In response to questions by Officer Thomas, Austin told her that he had had some beer and some powder cocaine that night, but that he was not "high" or intoxicated. All this information was elicited by the prosecutor on direct examination of the officer.

In his first assignment of error, Austin argues that it was error to admit into evidence his statements about the beer and the cocaine and the fact of his post-arrest request for an attorney and refusal to sign a waiver-of-rights form. There was an objection to the former, but not the latter.

We first consider the beer-and-cocaine statements. It is not clear from the record when, in relation to the *Miranda* warnings, these statements were elicited. We cannot accept the state's contention that the record establishes that these statements were voluntarily made. However, an accused has a constitutional guarantee to a trial free from prejudicial error, though "not necessarily one free of all error." *State v. Brown.*[1] To be deemed nonprejudicial, error of constitutional dimension must be harmless beyond a reasonable doubt. *State v. Williams.*[2] Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. See, generally, *State v. Lytle.*[3] Because these statements

---

1. (1992), 65 Ohio St.3d 483, 485, 605 N.E.2d 46, 48.

2. (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323, paragraph three of the syllabus.

3. (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623, paragraph three of syllabus.

were unrelated to guilt or innocence for the crime in this case, we decline to find prejudicial error in their admission.

We next examine Austin's argument that it was error to allow the officer to testify as to his post-arrest silence and request for an attorney. As there was no objection to this testimony, it must be analyzed under the plain-error standard. Trial error not preserved by objection may be considered on appeal only if it constitutes plain error. Under the plain-error analysis, the appellate court will not reverse unless the outcome of the trial would have been clearly otherwise but for a prejudicial error. *State v. Fields.*[4]

When a defendant in a criminal case invokes his constitutional right to remain silent, his silence may not be used against him. *Doyle v. Ohio.*[5] We are not persuaded that the officer's comments rose to the level of a prejudicial *Doyle* violation in this case, particularly under a plain-error analysis. We cannot say that without the comments any juror could have entertained a reasonable doubt as to Austin's guilt. *State v. Rowe.*[6] Austin's first assignment of error is overruled

## B. Speedy trial

In his second assignment of error, Austin argues that his case should have been dismissed for violation of his right to a speedy trial. Pursuant to R.C. 2945.71(E), in a felony case, a criminal defendant who is in jail without bail must be brought to trial within ninety days of his arrest. Austin was arrested on August 5, 1996, and his trial began when the jury was empaneled and sworn on January 10, 1997. The only continuance that must be analyzed to resolve this assignment of error is the one granted to perform the DNA testing. We hold that this continuance was both a reasonable and proper exercise of the court's own initiative pursuant to R.C. 2945.72(H), especially since the results could have been either inculpatory or exculpatory for the defendant. *State v. Mincy.*[7] Excluding this period from the time calculations, we conclude that there was no speedy-trial violation, and the second assignment of error is overruled. *State v. Blair.*[8]

---

4. (1994), 97 Ohio App.3d 337, 344, 646 N.E.2d 866, 870–871.

5. (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91.

6. (1993), 92 Ohio App.3d 652, 670, 637 N.E.2d 29, 40–41, citing *State v. Motley* (1985), 21 Ohio App.3d 240, 21 OBR 256, 486 N.E.2d 1259; *State v. Stephens* (May 19, 1995), Huron App. No. H–94–026, unreported, 1995 WL 302400.

7. (1982), 2 Ohio St.3d 6, 2 OBR 282, 441 N.E.2d 571.

8. (1990), 70 Ohio App.3d 774, 592 N.E.2d 854.

### C. Limitation on cross-examination

■ In his third assignment of error, Austin argues that the trial court limited his right to cross-examine the alleged victim to such an extent that his Sixth Amendment right to confrontation was violated. Specifically, Austin complains that the court unfairly limited his counsel's attempt to cross-examine the witness about apparent inconsistencies in her testimony about the date of the offense. While we do not agree with the state that it was irrelevant whether the offense occurred on August 5 or 6, we agree with the trial court that the attempt to impeach with dates alone was too sophisticated for an eleven-year-old. Defense counsel did not try to make the impeachment more age-appropriate, nor did the court preclude counsel from doing so. We find no error in the court limiting counsel as it did. The third assignment of error is overruled.

### D. Social worker's testimony

In his fourth assignment of error, Austin argues that the trial court erred by allowing Bev Ringle, a social worker, to vouch for the credibility of the child victim, in direct contravention of *State v. Boston*,[9] which holds that an expert may not give an opinion about the veracity of a child victim's statement. Austin particularly objects to Ringle being allowed to testify that the likelihood that abuse had occurred was high.

■ Ringle is a social worker who is part of a child-abuse team in the emergency room at Children's Hospital. As such, she was clearly qualified to give expert testimony in a child-sexual-abuse case. *Boston*.[10] This includes giving an opinion about whether there was abuse in a particular case. *Boston*.[11] It also includes describing the protocol for interviewing child victims regarding their abuse. *State v. Gersin*.[12] However, an opinion about whether there was abuse still must have the proper foundation to be admitted. In this case, there were two parts to Ringle's assessment and testimony that there was a high level of suspicion for abuse: physical findings and the history taken from the child. It was perfectly proper for Ringle to describe the protocol and to testify about the history, as she took it personally. However, as a social worker, Ringle was not competent to testify about the findings of the medical examination. *Berdyck v.*

---

9. (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, syllabus.

10. 46 Ohio St.3d at 119, 545 N.E.2d at 1231; *State v. Stowers* (1998), 81 Ohio St.3d 260, 262, 690 N.E.2d 881, 883.

11. 46 Ohio St.3d at 128, 545 N.E.2d at 1239.

12. (1996), 76 Ohio St.3d 491, 668 N.E.2d 486, syllabus.

*Shinde.*[13]   Austin is correct that it was error to allow this assessment into evidence without providing the necessary foundation testimony of the physician who did the physical examination.  *Hytha v. Schwendeman.*[14]   However, because the state later called to the stand the examining doctor, who testified exhaustively about the physical findings and who was subject to extensive cross-examination, the admission of the entire assessment by the social worker was harmless error.

### E.   Expert testimony

In his fifth assignment of error, Austin argues that the trial court abused its discretion by allowing a molecular biologist to testify as an expert in the field of population genetics.

Charlotte Word, Ph.D., who is a molecular biologist employed by Cellmark Laboratories, was substituted at the last minute as an expert for the state, filling in for Lisa Foreman, the population geneticist employed by Cellmark who actually signed the report.  Word gave certain opinions about the DNA obtained from sperm taken from the victim's underpants and shorts, including her opinion that Austin could not be excluded as a genetic match from the sample taken.  She testified that the DNA "fingerprint" taken from the sample tested would occur in the general African–American population at a frequency of only 1 in 61,000.[15]

In *State v. Lane* this court explained:

"In DNA fingerprinting, a molecular biologist prepares the samples and conducts the tests necessary to determine whether a forensic match can be identified.  If a match exits, a population geneticist calculates the probability that the match might have arisen by chance in the population."[16]

Word explained that the procedure at Cellmark was that molecular biologists did the basic laboratory work, which consisted of testing the samples, extracting the DNA, and giving an interpretation of whether there was a match.  See, also, *State v. Blair.*[17]   Then the report was sent over to one of three Ph.D.'s for review of the work of the molecular biologists to verify independently the conclusions

---

**13.**   (1993), 66 Ohio St.3d 573, 579, 613 N.E.2d 1014, 1021.  Compare *Stowers, supra* (psychologist in child-sexual-abuse trial permitted to testify about behavioral characteristics of child-abuse victims, based on her own personal training and experience).

**14.**   (1974), 40 Ohio App.2d 478, 69 O.O.2d 419, 320 N.E.2d 312.

**15.**   Simply put, this DNA fingerprint is only found in one out of every 61,000 African–Americans.

**16.**   (1995), 108 Ohio App.3d 477, 482, 671 N.E.2d 272, 275.

**17.**   (1990), 70 Ohio App.3d 774, 789–790, 592 N.E.2d 854, 863.

reached in the laboratory reports. She and Foreman were two of the three reviewing Ph.D. scientists. In this case, although Foreman signed the report, Word reviewed the basic data and came to her own conclusion, which was the same as Foreman's.[18]

Unlike the circumstances in *State v. Lane,* the prosecutor in this case clearly qualified Word as an expert in the field of population genetics. Word holds a bachelor's degree in biology in addition to a Ph.D. in microbiology. In the area of population genetics, during her seven years with Cellmark, Word testified that she had trained with Forman, taken population-genetics courses, attended seminars and meetings focused on population genetics, and testified numerous times on population genetics and been qualified as a population-genetics expert in approximately twenty states. This adequately established her as an expert in the field. See *State v. Prather.*[19] An expert need not be the best expert in the field in order to testify. *Ishler v. Miller.*[20] Given the background and training she described, we find no abuse of discretion in the court permitting Word to testify on population genetics in this case. *State v. Maupin.*[21] Further, while Foreman might have been more qualified, it does not follow that Word was unqualified.

### F. Deposition testimony by experts

In his sixth assignment of error, Austin argues that the trial court abused its discretion in allowing the deposition testimony of two of the state's experts without a showing that they were unavailable to testify in person at trial.

The state presented the testimony of two Cellmark employees, Charlotte Word and Lisa Grossweiler, by deposition at trial. Austin argues that, without a finding of unavailability, as defined in Evid.R. 804(B)(1), these depositions should have been precluded. This argument lacks merit.

The jury in this case was empaneled and sworn on January 10, 1997. The case was then continued in progress by the court until January 28. On January 16, the state made a motion to "perpetuate" the testimony of Grossweiler and Word.

Generally, a witness must testify in person unless there is a finding of unavailability as defined in Evid.R. 804(A) and Crim.R. 15. These rules, read

---

18. The Cellmark report was admitted into evidence over a defense objection, but this is not assigned as error on appeal.

19. (July 10, 1995), Brown App. No. CA94–08–010, unreported, 1995 WL 399141.

20. (1978), 56 Ohio St.2d 447, 10 O.O.3d 539, 384 N.E.2d 296; Evid.R. 702.

21. (1975), 42 Ohio St.2d 473, 71 O.O.2d 485, 330 N.E.2d 708.

together, contain exceptions that allow for the use of depositions at trial under certain circumstances—if the witness is out of state, or if the party offering the deposition has been unable to procure the attendance of the witness by subpoena. In this case, before the parties went to Maryland, when the trial court entered the commissions to take depositions of out-of-state witnesses, the court made a finding that the witnesses were not subject to the court's subpoena power. After an extensive colloquy between the court and the prosecutor, the court agreed that this order constituted a finding of unavailability and allowed the use of the depositions. Additionally, both Austin and his counsel were at the depositions. Both witnesses were extensively cross-examined by defense counsel, in the presence of Austin, satisfying due process and confrontation concerns. Thus, the use of these depositions at trial was proper. This assignment of error is overruled.

### G. Use of lab report

In his seventh assignment of error, Austin argues that the trial court erred in allowing police officer Lisa Thomas to testify about the contents of the coroner's lab report, particularly the findings regarding sperm and semen testing. The state concedes this was error, which it was, for the same reasons that we addressed in the fourth assignment of error. Thomas could testify about the chain of custody, but not the performance or results of the tests, for the fundamental reason that she did not perform the tests. Merely because a report is identified by its recipient does not cure the hearsay problems therein.[22] However, we agree with the state that this error was harmless because Joan Burke, the serologist who did perform the tests and who wrote the report, later testified herself about how the tests were done and the results thereof. This assignment of error is overruled.

### H. Weight and sufficiency of the evidence

In his eighth and ninth assignments of error, Austin argues that the trial court's judgment was against the manifest weight of the evidence and that the evidence was insufficient to sustain his conviction.

The issue in reviewing the sufficiency of the evidence is whether the evidence is legally sufficient or adequate to sustain a verdict. *State v. Thompkins*.[23] The function of the appellate court in reviewing the sufficiency of the evidence is to examine the evidence admitted at trial and to determine where such evidence, if believed, would convince the average mind of the defendant's

---

22. See Weissenberger's Evidence (1997), Section 803.75.

23. (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546.

guilt beyond a reasonable double. *State v. Jenks.*[24] In essence, after viewing the evidence in a light most favorable to the prosecution, the court must ask whether any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt.[25]

In the instant case, a rational trier of fact could have concluded, from the evidence provided by the child witness, the police officers, the emergency-room treating physician, and the social worker who interviewed the child, and the scientific DNA evidence, that Austin had raped the victim by use of force. Austin's ninth assignment of error is overruled.

The appellate court, in reviewing a claim that a verdict is against the manifest weight of the evidence, inspects the record and determines whether the trier of fact clearly lost its way in resolving conflicts in the evidence and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins.*[26]

Austin argues that since the child gave conflicting statements, his conviction was against the manifest weight of the evidence. This was only one very small part of a considerable amount of evidence, all of which was for the jury to give whatever weight it deemed appropriate. At the trial of a case, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *State v. DeHass.*[27] Further, given the extensive testimony from the victim's emergency-room attending physician, the social worker, and the police officers, and Cellmark's DNA analysis, we cannot say that the trier of fact clearly lost its way. We hold that Austin's conviction is not against the manifest weight of the evidence and we overrule his eighth assignment of error.

Therefore, the judgment of the trial court entered on the jury's verdict is affirmed.

*Judgment affirmed.*

SUNDERMANN, P.J., and GORMAN J., concur.

---

24. (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

25. *Id.; State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720.

26. (1997), 78 Ohio St.3d 380, 678 N.E.2d 541; *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717.

27. (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.