[Cite as *State v. Brumbach*, 2011-Ohio-6635.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-100792 |
| | | TRIAL NO. B-0908735 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| MATTHEW BRUMBACH, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  December 23, 2011

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Christine Y. Jones*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} Defendant-appellant Matthew Brumbach was sentenced to 50 years to life in prison after a jury found him guilty of five counts of rape. Brumbach was designated a Tier III sex offender or child victim offender under the current version of R.C. Chapter 2950, 2007 Am.Sub.S.B. No. 10 ("S.B. 10"). Brumbach now appeals his convictions, raising nine assignments of error. Because we determine that S.B. 10 cannot be applied to Brumbach's offenses, we remand this cause for resentencing under the law in effect at the time Brumbach committed the offenses. We affirm the remainder of the trial court's judgment.

### *Factual and Procedural Background*

{¶2} Brumbach was indicted on December 31, 2009, for rape after his adopted daughter disclosed that Brumbach had sexually abused her. The abuse was uncovered initially because the victim struggled with drug abuse for which she received counseling. After one of the counseling sessions, the victim admitted to her mother that her father had harmed her. The police became involved, and the victim was interviewed by a counselor at the Mayerson Center, where she stated that she had been repeatedly sexually abused by Brumbach. Brumbach had been married to the victim's mother, and he had adopted the victim when she was very young. Although Brumbach and the victim's mother had divorced, Brumbach had continued to spend time with his daughter. The sexual abuse had begun when the victim was seven years old. The abuse had occurred almost every time the victim had been with Brumbach, and the abuse had escalated over time. Brumbach had threatened to hurt the victim's mother if the victim told anyone about the abuse.

{¶3}   After the victim disclosed the abuse, one of the detectives assigned to the case recorded a telephone conversation between the victim and Brumbach. The victim called Brumbach pretending that she had written a diary that had detailed everything that had happened between her and Brumbach, and she told Brumbach that her stepfather had found the diary. Brumbach begged the victim to tell her family that the diary was just a "fantasy," to which the victim replied that no one would believe that the diary was a fantasy. Brumbach responded that he would go to prison, and when the victim asked why, Brumbach said he would be charged with "sex with a minor."

{¶4}   Brumbach entered a plea of not guilty to the rape charges, and the matter proceeded to a jury trial. At the time of trial, the victim resided in a juvenile-treatment facility in Indiana, and the victim's mother indicated that she would not honor a subpoena. As a result, the prosecution took a videotaped deposition of the victim, which was played for the jury at trial. The victim testified in her deposition with detail regarding specific instances of abuse that she was able to recall. She testified that the abuse had occurred almost every time she had visited her father since the age of seven. She stated that the abuse had stopped once she had reached the end of her eighth-grade school year. She had begun using drugs to mask her pain and embarrassment.

{¶5}   The jury found Brumbach guilty of three counts of rape under R.C. 2907.02(A)(1)(b) and two counts of rape under R.C. 2907.02(A)(2). The trial court sentenced Brumbach to ten years to life in prison on the rape counts under R.C. 2907.02(A)(1)(b) and ten years in prison on the rape counts under R.C.

3

2907.02(A)(2) for an aggregate sentence of 50 years to life in prison. This appeal ensued.

### Speedy Trial

{¶6} Brumbach's first assignment of error alleges that the rape charges pending against him should have been dismissed for lack of a speedy trial. Under R.C. 2945.71(C)(2), a defendant charged with a felony must be brought to trial within 270 days after the defendant's arrest. For purposes of calculating the 270-day time period, R.C. 2945.71(E) provides that each day the defendant is jailed counts as three days. Because Brumbach was jailed prior to trial, his trial must have occurred within 90 days of his arrest. The time period within which a defendant must be tried is tolled by the defendant's request for a continuance, or for another reasonable continuance, and for "[a]ny period of delay necessitated by reason of a * * * motion, proceeding, or action made or instituted by the accused[.]" R.C. 2945.72(H) and (E).

{¶7} Brumbach argues on appeal that the trial court erred in its speedy-trial calculation because the trial court should have counted an additional 15 days for the time between January 20, 2010, and February 4, 2010. Brumbach requested a continuance on January 20, and the entry granting the requested continuance indicated that the case was continued until January 3, 2010. At the time of the entry, January 3, 2010, had passed, and thus Brumbach argues that the continuance was not effective to toll the speedy-trial time. The record, however, indicates that the continuation date of January 3 is nothing more than a scrivener's error and that both the parties and the court intended the January 20 entry to continue the case until February 3—not January 3. After the January 20 entry was filed, the parties next appeared before the court on February 3, when Brumbach requested a one-day

continuance. Therefore, the trial court did not err in tolling the time for a speedy trial between January 20 and February 4 under R.C. 2945.72(H).

{¶8} Brumbach also argues that the trial court should have counted an additional nine days in the speedy-trial calculation for the time between July 10, 2010, and July 19, 2010. Brumbach argues that the June 2, 2010, entry by the court granted a continuance, at Brumbach's request, to July 10, but nothing in the record continued the case from July 10 to July 19. The state contends that the June 2 entry continued the case to July 19, and not July 10, because July 10 was a Saturday, and the parties did not appear before the court until July 19. It is not clear from the record whether the June 2 entry continued the case until July 19, so we assume for our calculation purposes that Brumbach is correct in arguing that nine days should have been added to the speedy-trial time.

{¶9} Brumbach further argues that the trial court should have counted the period between August 2, 2010, and August 17, 2010, in the speedy-trial calculation because the state failed to use due diligence to obtain the victim as a witness. On July 27, 2010, the state requested a continuance from August 2 until August 9 to secure the availability of the police officer as a witness—not the victim. Therefore, the trial court tolled the speedy-trial time from August 2 to August 9 as a reasonable continuance under R.C. 2945.72(H).

{¶10} The trial court granted the state a continuance on August 9 until August 17 to secure the victim's testimony. On August 12, however, Brumbach filed a motion to dismiss for lack of a speedy trial, and that same day the court entered an order continuing the case until August 17. Assuming that Brumbach is correct in arguing that the continuance granted on August 9 did not toll the speedy-trial time

because the state failed to use due diligence, this would not have changed the trial court's calculation. The trial court counted the time between August 9 and August 12 in its calculation against the state, and the trial court correctly determined that the speedy-trial time was tolled when Brumbach filed his motion to dismiss. R.C. 2945.72(E).

{¶11} The trial court determined that, as of August 17, 2010, 72 days had passed since Brumbach's arrest for purposes of the speedy-trial statute. Even if we assume that the trial court erred by not counting the time period from July 10 through July 19 in its calculation, this would have brought the total number of days to 81. The time periods from August 17 through September 12 and from September 13 through October 19 were tolled under R.C. 2945.72(H) because of continuances at Brumbach's request. Brumbach's trial began on October 20. Therefore, Brumbach's trial occurred within the 90-day requirement.

{¶12} Brumbach's first assignment of error is overruled.

### Sufficiency and Weight of the Evidence

{¶13} In Brumbach's second, third, and fourth assignments of error, Brumbach contests the sufficiency and the weight of the evidence adduced to support his convictions and argues that the trial court improperly denied his Crim.R. 29 motions for acquittal.

{¶14} A sufficiency claim and the denial of a Crim.R. 29 motion for an acquittal are considered under the same standard of review. *State v. Gorrasi*, 1st Dist. No. C-090292, 2010-Ohio-2875, ¶11. In a challenge to the sufficiency of the evidence, the question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the

essential elements of the crime beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. By contrast, in resolving a challenge to the weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id. at 387. A new trial should only be granted in the exceptional case where the evidence weighs heavily against the conviction. Id. Ultimately, the "weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact." *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.

{¶15} Brumbach was convicted of three counts of rape under R.C. 2907.02(A)(1)(b) and two counts of rape under R.C. 2907.02(A)(2). R.C. 2907.02(A)(1)(b) provides that, "[n]o person shall engage in sexual conduct with another * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶16} The victim testified that her father had begun engaging in sexual conduct with her at the age of seven. The sexual abuse had continued and had become progressively worse. The victim remembered, with detail, specific instances of sexual conduct with her father, and she testified that Brumbach had threatened to harm her mother if she told anyone about the abuse. She testified that the abuse had stopped at the end of her eighth-grade year. The jury also heard a recorded telephone conversation between the victim and Brumbach, where Brumbach had stated that he would be going to jail for having sex with a minor.

{¶17} Based upon the telephone recording, the victim's testimony, as well as the other evidence presented at trial, a rational trier of fact could have found the elements of rape proven beyond a reasonable doubt. Furthermore, we cannot determine that the jury clearly lost its way and created a manifest miscarriage of justice in finding Brumbach guilty. We overrule Brumbach's second, third, and fourth assignments of error.

### *Excessive Sentence*

{¶18} In his fifth assignment of error, Brumbach alleges that the trial court erred in imposing maximum, consecutive sentences for his offenses, and that his aggregate sentence of 50 years to life was excessive. In determining whether a sentence is excessive, a reviewing court must first determine whether the sentence was clearly and convincingly contrary to law. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶14-17. If the sentence was not contrary to law, the appellate court then reviews the sentence under an abuse-of-discretion standard. Id. Where the trial court does not explicitly state on the record its consideration of the applicable sentencing statutes, the appellate court nonetheless presumes that the trial court properly considered those statutes. Id. at fn. 4.

{¶19} Brumbach concedes that the sentences he received were within the applicable statutory ranges for rape offenses and were not contrary to law, but Brumbach contends that his aggregate sentence was an abuse of discretion. We cannot agree. The evidence presented at trial revealed that Brumbach had engaged in continued sexual abuse of his adopted daughter. The abuse had progressed over time, and Brumbach had used psychological force to keep the victim from telling anyone. The victim had convinced her father to stop the abuse, and soon after, the

abuse had been uncovered during the victim's counseling. At the time of trial, the victim resided in a juvenile-treatment facility. In light of the record, we cannot say that the trial court's imposition of maximum, consecutive sentences in this case was an abuse of discretion, and we overrule the fifth assignment of error.

### *Use of Videotaped Deposition*

{¶20} In his sixth assignment of error, Brumbach contends that the trial court erred in allowing the victim to testify via a videotaped deposition. In general, a witness must testify at trial in person, but Crim.R. 15 allows for the use of a videotaped deposition if a witness is unavailable, as defined in Evid.R. 804(A), which means that the party offering the deposition has been unable to procure the attendance of the witness by subpoena, or that the witness is out of state. *State v. Austin* (1998), 131 Ohio App.3d 329, 338, 722 N.E.2d 555.

{¶21} At the time of trial, the minor victim resided in a juvenile-treatment facility in Indiana, and the victim's mother told the prosecutor that she would not honor the subpoena. Brumbach and his counsel were present at the victim's deposition and had an opportunity to cross-examine the victim. Therefore, the use of the victim's videotaped deposition satisfied the requirements of Crim.R. 15. Brumbach nevertheless contends that the state should have secured the victim's availability pursuant to R.C. 2939.27. R.C. 2939.27 allows a judge to recommend that an out-of-state witness be taken into custody to procure that witness's testimony. Neither Crim.R. 15 nor Evid.R. 804 require that the trial court use the procedure under R.C. 2939.27 before admitting a videotaped deposition. The trial court stated on the record that it was hesitant to use this procedure because it would require holding the victim in custody before and during the trial.

9

{¶22} Brumbach argues that the error in admitting the videotaped deposition was further compounded when the trial court sustained various objections made by the state to defense counsel's questions regarding accusations of abuse by other men made by the victim's mother. The trial court's admission or exclusion of evidence is subject to an abuse-of-discretion standard. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. During the victim's deposition, the state objected to various questions Brumbach's counsel posed to the victim regarding allegedly false sexual-abuse allegations made by the victim's mother against the victim's grandfather. We fail to see how this line of questioning is relevant, and the trial court correctly excluded it pursuant to Evid.R. 402.

{¶23} The trial court did not err in admitting the victim's deposition testimony, and the sixth assignment of error is overruled.

### Motion to Suppress the Telephone Recording

{¶24} In his seventh assignment of error, Brumbach argues that the recorded telephone conversation between him and the victim should have been suppressed. R.C. 2933.51 et. seq., Ohio's electronic-surveillance law, generally prohibits interception of wire, oral, or electronic communications without a warrant. R.C. 2933.52(B)(3) provides an exception, which allows a law enforcement officer to intercept a communication, even where the officer is not a party to the communication, if the officer has prior consent of one of the parties to the communication.

{¶25} Brumbach argues that the recording was illegally obtained under R.C. 2933.52(B)(3) because the victim's consent to the taping had not been freely given. Brumbach contends that the name of the detective, to whom the victim had given her

consent to record the conversation, did not appear on the police consent form. At the hearing on the motion to suppress, however, the detective testified that he had obtained the victim's consent, and the detective had stated his name on the recording before the victim had placed the call to Brumbach. Moreover, nothing in the record indicates that the victim had been coerced into recording Brumbach, and the victim testified in her deposition that no coercion had occurred.

{¶26} We cannot determine that the trial court erred in overruling Brumbach's motion to suppress the telephone recording. The seventh assignment of error is overruled.

### *Prosecutorial Misconduct*

{¶27} In his eighth assignment of error, Brumbach contends that the state committed prosecutorial misconduct when the prosecutor, in closing, made derogatory remarks about the defense counsel. To obtain a reversal on the ground of improper remarks made during closing argument, the defendant must demonstrate that the improper remarks deprived the defendant of a fair trial. *State v. Hirsch* (1998), 129 Ohio App.3d 294, 309-310, 717 N.E.2d 789. Brumbach cites to *State v. Smith* (1984), 14 Ohio St.3d 13, 470 N.E.2d 883, 886, where the court determined that a prosecutor's derogatory comments about defense counsel were an improper attempt to sway the jury. In *Smith*, the prosecutor referred to the defense's case as "lies," "garbage," and "a well conceived and well rehearsed lie," and the prosecutor accused defense counsel of eliciting perjured testimony. Id. at 885.

{¶28} In this case, defense counsel objected to the following statement made by the prosecutor during closing argument: "Mr. Haas insinuated -- I can't believe he did this -- insinuated in this case that the victim is using sex as a weapon. The

11

victim of a rape by her father from the time she was seven years old is using sex as a weapon. That's insulting." (T.p. 954.)

{¶29} The prosecutor's statement in Brumbach's case does not reach the same level of impropriety as those statements made in *Smith*, and we cannot determine that the prosecutor's statement regarding defense counsel was improper. Moreover, even if the statement was improper, Brumbach cannot show how the prosecutor's statement resulted in any prejudice to his case in light of the evidence against him. We overrule Brumbach's eighth assignment of error.

### *Sex-Offender Classification*

{¶30} In his ninth assignment of error, Brumbach argues, relying primarily on *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, that his Tier III sexual-offender classification under S.B. 10 is unconstitutional and must be vacated. Nothing in the record shows definitively that a crime occurred on or after January 1, 2008, the effective date of S.B. 10. Therefore, the defendant's sex-offender classification falls under Megan's Law. See id.

{¶31} In conclusion, we sustain Brumbach's ninth assignment of error to the extent that we reverse the judgment of the trial court designating Brumbach as a Tier III sex offender. We remand for resentencing under the sexual-offender law in effect at the time Brumbach committed the offenses.

Judgment affirmed in part, reversed in part, and cause remanded.

HILDEBRANDT, P.J., and SUNDERMANN, J., concur.

Please Note:
The court has recorded its own entry on the date of the release of this opinion.

12