[Cite as *Sanchez v. Sanchez*, 2016-Ohio-4933.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ANGELA SANCHEZ, | : | APPEAL NO. C-150441 |
| | | TRIAL NO. DV1401196 |
| Petitioner-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| HUGO SANCHEZ, | : | |
| | | |
| Respondent-Appellant. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations
Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 13, 2016

*The Farrish Law Firm* and *Michaela M. Stagnaro*, for Petitioner-Appellee,

*McKinney & Namei* and *Paul W. Shonk*, for Respondent-Appellant.

**STAUTBERG, Judge.**

{¶1}   Respondent-appellant Hugo Sanchez appeals from the judgment of the trial court issuing a five-year domestic violence civil protection order ("DVCPO") prohibiting contact with his six-year-old twin daughters, A.S. and N.S.   For the following reasons, we affirm.

## Background

{¶2}   Hugo and petitioner-appellee Angela Sanchez were married and had two children, twin daughters A.S. and N.S., born on August 5, 2008.   Hugo moved out of the family home in 2013, and Angela filed for divorce in January 2014.

{¶3}   Due to sexualized behavior by A.S., Angela began to suspect that Hugo might have sexually abused the children.   The twins began therapy with separate trauma psychologists at Cincinnati Children's Hospital.   Dr. Erica Messer provided therapy to N.S., and Dr. Heather Bensman provided therapy to A.S.   A few months later, the twins told Angela that Hugo had sexually abused them on several occasions prior to his moving out of the house.   Angela immediately informed Dr. Bensman and Dr. Messer of the alleged abuse, and also contacted the Hamilton County Department of Job and Family Services ("JFS").   Chris Herrick, a JFS investigator, was assigned to the case.

{¶4}   Angela scheduled forensic interviews for the twins at the Mayerson Center for Safe and Healthy Children.   Cecilia Friehofer, a social worker for Children's Hospital and a forensic interviewer for the Mayerson Center, interviewed and evaluated the twins separately to determine whether the information provided by the twins was consistent with inappropriate sexual contact and was concerning for sexual abuse.   During the interviews, which were recorded, both girls told Ms.

Friehofer that Hugo had touched them inappropriately, providing details of separate incidents that occurred while Hugo still lived in the house.

{¶5}  The twins met with their own therapists a few days after their interviews at the Mayerson Center.  A.S. provided Dr. Bensman with some information about the sexual abuse that was consistent with the information provided to Ms. Friehofer.  N.S. discussed her Mayerson Center interview with Dr. Messer, during which she told Dr. Messer about a specific incident of sexual abuse.

{¶6}  Angela thereafter filed for a DVCPO for herself and on behalf of A.S. and N.S.  At the DVCPO hearing, Mr. Herrick, Dr. Bensman, Dr. Messer, and Ms. Friehofer testified on behalf of Angela and the twins.

{¶7}  Mr. Herrick stated that sexual abuse was "indicated."  Dr. Bensman and Dr. Messer testified that the girls separately provided information about the sexual abuse, and that their stories were consistent with their disclosures to Ms. Friehofer.  Ms. Friehofer testified as to her separate interviews with the twins, who each disclosed that Hugo had touched them inappropriately.  Ms. Friehofer opined that the information was consistent with inappropriate sexual contact.  Over defense counsel's objection, Ms. Friehofer also concluded that the girls had been sexually abused by Hugo, despite testifying earlier that her "job is not to make a finding of abuse * * * [but] to assess if the information provided by the child is consistent with inappropriate sexual contact and is concerning for abuse."  Mr. Herrick, Dr. Bensman, Dr. Messer, and Ms. Friehofer testified that they did not believe that the girls had been coached.

{¶8}  Dr. David Lowenstein, a psychologist, testified on behalf of Hugo. Dr. Lowenstein had reviewed the twins' Mayerson Center interviews, and testified that

he believed that the interviews were not credible. He believed that Ms. Friehofer asked leading questions that had tainted the interviews.

{¶9} At the conclusion of the hearing, the magistrate found by a preponderance of the evidence that the twins were in danger of becoming or had been victims of domestic violence or sexually oriented offenses. The magistrate granted the DVCPO for five years, but ordered Hugo to have supervised parenting time with the twins upon the approval of the children's therapists.

{¶10} Hugo filed objections to the magistrate's decision. The trial court overruled Hugo's objections, and ordered a five-year DVCPO that eliminated Hugo's parenting time altogether. Hugo timely appealed the trial court's judgment, and he asserts five assignments of error.

## Assignments of Error

### I. Jurisdiction

{¶11} In his first assignment of error, Hugo argues that the trial court lacked subject matter jurisdiction over the parties' parental rights, responsibilities, and parenting time. His argument is without merit.

{¶12} The domestic relations division of the court of common pleas has jurisdiction over all proceedings under R.C. 3113.31, which includes civil protection orders. *See* R.C. 3113.31(A)(2) and (B); *Hoyt v. Heindell*, 191 Ohio App.3d 373, 2010-Ohio-6058, 946 N.E.2d 258, ¶ 26 (11th Dist.). Here, Angela filed for a DVCPO under R.C. 3113.31 with the Hamilton County Court of Common Pleas, Domestic Relations Division. Therefore, pursuant to R.C. 3113.31(B), the trial court had subject matter jurisdiction.

{¶13} Hugo further argues that the trial court lacked jurisdiction over this case because R.C. 3113.31(E)(1)(d) does not allow "another court" to determine the

allocation of parental rights, responsibilities, or parenting time if "another court" is determining or has determined parental rights, responsibilities, or parenting time. This argument too is without merit.

{¶14} The purpose of R.C. 3113.31(E)(1)(d) is to prevent forum shopping where another court has previously issued a custody order. *See Couch v. Harrison*, 12th Dist. Clermont No. CA2000-08-063, 2001 Ohio App. LEXIS 651, *12-14 (Feb.12, 2001). In this case, the parties' divorce proceeding and the DVCPO were filed in the same court, the Hamilton County Court of Common Pleas, Domestic Relations Division, and were presided over by the same judge. Therefore, there was no issue of forum shopping, and the trial court had jurisdiction over this matter. *See id.*; *Waters v. Lattany*, 6th Dist. Lucas No. L-06-1157, 2007-Ohio-1047, ¶ 32. We overrule Hugo's first assignment of error.

## II. Issuance of the Domestic Violence Civil Protection Order

{¶15} In his second assignment of error, Hugo contends that the trial court's issuance of the DVCPO was against the manifest weight of the evidence. We disagree.

{¶16} To grant a DVCPO, "the trial court must find that the petitioner has shown by a preponderance of the evidence that the petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34, 679 N.E.2d 672 (1997), paragraph two of the syllabus; R.C. 3113.31(D). In reviewing a claim challenging the manifest weight of the evidence, we weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence the fact finder clearly lost its way and created a such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-

Ohio-2179, 972 N.E.2d 517, ¶ 20; *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *see In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 14, 16. A reviewing court should follow a presumption that the trial court's findings are accurate as the trial court is in the best position to view the witnesses and determine the credibility of their testimony. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). An appellate court will not reverse a trial court's decision to grant a DVCPO where the decision is supported by the manifest weight of the evidence. *See Hyde v. Smith*, 12th Dist. Butler No. CA2014-09-193, 2015-Ohio-1701, ¶ 13; *Bullard v. Alley*, 4th Dist. Pike No. 12CA835, 2014-Ohio-1016, ¶ 11; *Serdy v. Serdy*, 7th Dist. Noble No. 13 NO 400, 2013-Ohio-5532, ¶ 28.

{¶17} Under R.C. 3113.31(A)(1),

"Domestic violence" means the occurrence of one or more of the following acts against a family or household member: * * * (c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code * * *.

{¶18} An "abused child" includes any child who "[i]s the victim of 'sexual activity' * * * where such activity would constitute an offense * * *, except that the court need not find that any person has been convicted of the offense in order to find that the child is an abused child." R.C. 2151.031(A). Sexual activity can mean sexual conduct, as defined by R.C. 2907.01(A), or sexual contact, as defined by R.C. 2907.01(B). R.C. 2907.01(C).

{¶19} In this case, evidence was presented that the twins had told Angela, Ms. Friehofer, Dr. Bensman, and Dr. Messer that they had been sexually abused by Hugo prior to his moving out of the home.

{¶20} The recorded interviews of the twins at the Mayerson Center are informative. N.S. described several instances of abuse that occurred in the bedroom that she shared with A.S. N.S. was able to spontaneously provide specific details of abuse. A.S. indicated that Hugo had touched her inappropriately in her bedroom, in their living room, and at a neighbor's house. Additionally, the recording shows that both girls corrected Ms. Friehofer several times throughout the interview when she misquoted their statements.

{¶21} Dr. Bensman's notes from the December 2, 2014 therapy session with A.S. indicated that A.S. spoke about times of physical abuse by her father toward her and her sister, as well as sexual abuse. Dr. Messer's notes from her December 2, 2014 therapy session with N.S. indicated that N.S. spoke of physical and sexual abuse.

{¶22} Based on her interview with the twins, Ms. Friehofer concluded that inappropriate sexual contact was indicated. Dr. Bensman and Dr. Messer testified that the twins had expressed multiple times in their therapy sessions that they were fearful of their father. Furthermore, all witnesses called on behalf of Angela and the twins expressed that they did not believe that the girls had been coached, as A.S.'s and N.S.'s statements were consistent and spontaneous.

{¶23} While Hugo's expert Dr. Lowenstein testified that he believed that the girls' answers were corrupted by Ms. Friehofer's examination, he testified that he was "assuming [the twins] believe that they were sexually abuse[d]. * * * [W]hen they were in the clinic, they believed what they were saying[.]"

{¶24} We do not find that the trial court so lost its way in weighing the evidence presented in granting the DVCPO as to create a manifest miscarriage of justice warranting a new trial. We overrule Hugo's second assignment of error.

### III. Scope of the Domestic Violence Civil Protection Order

{¶25} In Hugo's third assignment of error, he alleges that the scope of the DVCPO was excessive and was an abuse of discretion. We disagree.

{¶26} R.C. 3113.31 authorizes a trial court to tailor a DVCPO to the circumstances of each case. We will not reverse the scope of a DVCPO absent an abuse of discretion. *See Parker v. Parker,* 1st Dist. Hamilton No. C-130658, 2014-Ohio-5516, ¶ 7; *Felton v. Felton*, 79 Ohio St.3d 34, 38, 679 N.E.2d 672 (1997); *Yantek v. Coach Builders Ltd.*, 1st Dist. Hamilton No. C-060601, 2007-Ohio-5126, ¶ 11-12. An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Parker* at ¶ 7; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶27} DVCPOs issued under R.C. 3113.31 are utilized to prevent future domestic violence and "ensure the safety and protection of the complainant." *Felton* at 37; *see Parker* at ¶ 8.

{¶28} In determining the proper scope of the order, the trial court found that parenting time with Hugo was not in the best interest of the children. The trial court reviewed the interviews of the twins and concluded that their statements were credible. Dr. Bensman and Dr. Messer testified that upon separation from Hugo, the twins' behavior had improved. The trial court determined that because the psychologists, including Hugo's own expert, testified that the girls believed that they were sexually abused, any parenting time with Hugo was not in the best interest of the children. After reviewing the record, we find that the trial court did not abuse its

8

discretion by issuing a five-year DVCPO with no parenting time. We overrule Hugo's third assignment of error.

## IV. Expert Witness

{¶29} In his fourth assignment of error, Hugo argues that Ms. Friehofer should not have been permitted to testify as an expert witness. He contends that Ms. Friehofer did not meet the requirements of an expert witness pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

{¶30} The exclusion or admission of evidence generally rests within the trial court's discretion. *Gibbs v. Zadikoff*, 1st Dist. Hamilton No. C-060869, 2007-Ohio-4883, ¶ 26; *State v. Haines*, 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, ¶ 50. Therefore, a reviewing court will not disturb evidentiary rulings in the absence of an abuse of discretion that has created material prejudice. *Gibbs* at ¶ 26; *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62. "Whether an expert's opinion is admissible depends on whether the principles and methods employed by the expert to reach that opinion are reliable, and not 'whether his conclusions are correct.' The credibility to be afforded the expert's conclusions remains a matter for the trier of fact." (Citations omitted.) *State v. Carr*, 1st Dist. Hamilton No. C-090109, 2010-Ohio-2764, ¶ 23, quoting *State v. Finley*, 1st Dist. Hamilton No. C-061052, 2008-Ohio-4904, ¶ 32, *reversed in part on other grounds*, *State v. Jackson*, 1st Dist. Hamilton No. C-090414, 2010-Ohio-4312.

{¶31} Evid.R. 702 states,

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply: (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles; (2) The design of the procedure, test, or experiment reliably implements the theory; (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

{¶32} In this case, Ms. Friehofer testified that she was employed as a social worker with Cincinnati Children's Hospital and as a forensic interviewer with the Mayerson Center. Ms. Friehofer had been a forensic interviewer since 2006, handled over 600 cases dealing with sexual abuse every year, and had testified in court cases between ten and 15 times in similar matters. Ms. Friehofer testified to the Mayerson Center's protocol for questioning children about telling the truth. Ms. Friehofer expressed that "my job is not to make a finding of abuse or not. My job is to assess if the information provided by the child is consistent with inappropriate sexual contact and is concerning for sexual abuse."

{¶33}  Defense counsel did not object to Ms. Friehofer testifying as an expert witness in front of the magistrate, but did object regarding her expert opinion as to whether the children were sexually abused.  The magistrate permitted Ms. Friehofer to express her opinion because of her experience, and because her opinion was a limited opinion that did not go to the diagnosis of the children.  Ms. Friehofer testified that she believed the twins had been sexually abused by Hugo.

{¶34}  In his objections to the magistrate's decision, Hugo asserted that Ms. Friehofer was not qualified to testify as an expert under Evid.R. 702. The trial court recognized that "although [Hugo] now contends that it was error to allow Ms. Friehofer to testify as an expert, this was not the basis of the objection." Nevertheless, the trial court found that the evidence supported the magistrate's conclusion that Ms. Friehofer, a licensed social worker and trained forensic interviewer, possessed sufficient qualifications to testify pursuant to Evid.R. 702. *See State v. Hughes,* 10th Dist. Franklin No. 14AP-360, 2015-Ohio-151, ¶ 64; *Eve v. Johnson*, 1st Dist. Hamilton No. C-970957, 1998 Ohio App. LEXIS 5034, *7 (Oct. 30, 1998) (the credibility of an expert's conclusion and the relative weight are determinations left to the trier of fact); *State v. Nemeth*, 82 Ohio St.3d 202, 210, 694 N.E.2d 1332 (1998).

{¶35}  After reviewing the record, we hold that the trial court did not abuse its discretion in permitting Ms. Friehofer to testify as an expert witness regarding whether the children's statements were consistent with sexual abuse, as she was sufficiently qualified for this purpose.  *See State v. Austin,* 131 Ohio App.3d 329, 336, 722 N.E.2d 555 (1st Dist.1998).  However, the trial court should have excluded Ms. Friehofer's conclusion that the twins had been sexually abused, because, as Ms. Friehofer testified, the ultimate conclusion of whether the children had been sexually

abused was outside of the scope of her role in interviewing the children. *Id.*; *compare State v. Boston*, 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989), *modified*, *State v. Dever*, 64 Ohio St.3d 401, 596 N.E.2d 436 (1992). Nevertheless, the trial court's allowance of Ms. Friehofer's conclusory statement was harmless error as it was cumulative to the remaining evidence in support of the trial court's issuance of the DVCPO. *State v. Brooks*, 5th Dist. Richland No. 2011-CA-59, 2012-Ohio-1725, ¶ 38. Therefore, we overrule Hugo's fourth assignment of error.

## V. Parental Rights and Due Process

{¶36} In his fifth assignment of error, Hugo alleges that Ms. Friehofer should not have been permitted to interview the children without his permission and therefore the DVCPO should not have been issued to the extent that it relied upon Ms. Friehofer's testimony.

{¶37} In essence, Hugo appears to claim that the trial court denied him due process of law when it "allowed the Mayerson Center" to deprive him of "his liberty interest in having a relationship with his children" because, Hugo argues, the Mayerson Center used "unfair and biased procedures." Hugo did not raise this argument in the trial court. He has therefore forfeited all but plain error on appeal. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997).

{¶38} Here, the trial court did not "allow" or disallow Angela to take the children to the Mayerson Center and, in fact, played no role in that decision whatsoever. Further, Hugo had the opportunity to cross-examine Ms. Friehofer at length concerning the procedures she used in interviewing the children. We fail to see, and Hugo cites no authority to support, how Hugo's due process rights were violated. We find no error, let alone plain error. We overrule Hugo's fifth assignment of error.

## Conclusion

{¶39}   Having overruled all five of Hugo's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**FISCHER, P.J.,** and **HENDON, J.,** concur.

Please note:

This court has recorded its own entry this date.