[Cite as *State v. Palmer*, 2018-Ohio-1266.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. William B. Hoffman, J. |
| -vs- | |
| | Case No. 17 CA 13 |
| WILLIAM PALMER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No.  16 CR 556


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      March 30, 2018


APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

GARY BISHOP                            WILLIAM T. CRAMER
PROSECUTING ATTORNEY                   470 Olde Worthington Road
JOSEPH C. SNYDER                       Suite 200
ASSISTANT PROSECUTOR                   Westerville, Ohio  43082
38 South Park Street
Mansfield, Ohio  44902

*Wise, P. J.*

**{¶1}** Appellant William Palmer appeals his convictions on one count of felonious assault, two counts of kidnapping, and one count of theft against an elderly victim, entered in the Richland County Common Pleas Court following a jury trial.

**{¶2}** Appellee is State of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶3}** Defendant-Appellant William Palmer was charged with one count of felonious assault, in violation of R.C. §2903.11(A)(1), a second degree felony, one count of kidnapping, in violation of R.C. §2905.01(B)(2) (substantial risk of serious physical harm) and one count of kidnapping, in violation of R.C. §2905.01(A)(3) (to terrorize or inflict serious physical harm), both first degree felonies. All three counts arose from an incident that occurred on or about August 6, 2016, involving Palmer's girlfriend D.L.

**{¶4}** Appellant was also charged with theft, in violation of R.C. §2913.02, against an elderly victim, in an amount over $1,000, a fourth degree felony. This count arose from an unfinished roofing job which Appellant had taken money to do during the summer of 2016.

**{¶5}** The following testimony and evidence was presented at trial:

*Felonious Assault and Kidnapping*

**{¶6}** In June of 2016, D. L. and Appellant began a relationship. (T. at 256). During their relationship, D.L. lived with Appellant at 302 Lenox. (T. at 262). Near the end of July, Appellant cut her ear with a pocket knife to, in his mind, make sure she was being honest with him. (T. at 258). The cut to her ear left a scar. (T. at 259). Through her brief

relationship with Appellant, D.L. was not allowed to use a phone or go anywhere without his permission. (T. at 274-275).

{¶7}   On the 6th of August, D.L. went out to eat with her parents and son for his birthday. (T. at 260). When she got back home, Appellant became angry about a Facebook message he had seen on her phone. *Id.* Appellant responded to this by gagging D.L., tying her up, and hitting her with a billy club, flashlight, his fist, and a mirror. (T. at 260). Appellant hit her with the flashlight somewhere between 20 to 30 times. (T. at 266).

{¶8}   The club was used to strike her legs repeatedly. (T. at 266). The club had "Billy's Club" written on it. (T. at 453). Appellant tied D.L.'s hands with the cinch from a robe and her feet with a leather belt. (T. at 262-263). She was hog-tied with her hands and ankles bound together behind her back with her laying on her stomach. (T. at 262). He also held a knife to her neck and demanded she tell him the truth, which he thought she was withholding.. Appellant regularly carried this knife with him. (T. at 265). Appellant kept D.L. tied up on a couch in the house for six hours. (T. at 263-264). During this time, he threatened to kill her, threats that she believed he would carry out. (T. at 277).

{¶9}   Eventually, Appellant untied D.L., but she did not have the opportunity to leave until the next day. (T. at 267). Appellant allowed her to leave with a friend of hers in order to get cigarettes and money for him, but instead she got dropped off in Shelby so she could get money from her parents and a hotel room. (T. at 268). After three days, she carne back to Mansfield to press charges. (T. at 269). D.L. did not immediately go to the police because she just wanted to be away from him. (T. at 268). While D.L. was hiding from Appellant, Appellant called a family friend of D.L.'s and threatened him in an attempt

to find her. (T. at 585). D.L. went to a friend's house on Seventh Avenue, but Appellant found her there; however, but she would not let him into the house. (T. at 268).

{¶10} On the 9th of August, 2016, D.L. contacted police and spoke with Officer Kiner. (T. at 273). The same day, D.L. went to Mansfield Ohio Health to be treated for her injuries. (T. at 273, 329). She was found to have a bruise on her right thigh, bruises to both eyes and both ears, and a scrape on her left ear. (T. at 333).

{¶11} Later that day, Appellant asked a family friend, William Spognardi, to take him to a place on Seventh Avenue where he thought he might locate D.L. (T. at 349-350). Spognardi dropped Appellant off and did not hear from him again until late afternoon. (T. at 350). Appellant then asked him to come pick up him to take him back to his house. *Id.* When Mr. Spognardi found him, Appellant was sprawled out on the front porch of a house and needed help getting into the car. *Id.* Appellant wanted to go to a different place to look for D.L. but Mr. Spognardi was only willing to take him back home. *Id.*

{¶12} On the way, they noticed a SWAT team at Appellant's home. They stopped at a McDonalds and Appellant asked Mr. Spognardi to take him to another house, but Mr. Spognardi asked why the police were there. (T. at 351). Appellant then told him that it was because he hurt D.L. and that was also why he was looking for her. (T. at 351, 364). Mr. Spognardi then started driving Appellant back to the house when the police surrounded them and Appellant was arrested. (T. at 351). When Appellant got out of the car, he left his crack pipe and phone on the seat, which were recovered by police. (T. at 352). A box cutter was also found in his possession. (T. at 373).

{¶13} When Appellant was questioned about D.L.'s injuries he insisted he was not there when she was injured, and that she was always running around and doing things.

(T. at 451). But then he said that she never leaves his side and he cannot get anything done because of it. *Id.* He told police that D.L.'s injuries happened before she went out to lunch with her parents on the 6th, but her parents said that she did not have any black eyes when they met her. *Id.*

**{¶14}** After a search of Appellant's home, a couch cushion was recovered which appeared to have a bloodstain on it and a flashlight. (T. at 388-389). Tests of the box cutter found on Appellant when he was arrested and a mirror turned up the presence of blood. (T. at 418). There was a 50/50 DNA mixture on the knife blade and hinge area between a male and a female. D.L. could not be excluded from the mixture. (T. at 428). Tests of the blood found on the mirror found that it was a match for D.L.

*Theft*

**{¶15}** In June of 2016, Kelly Chapman and Gilbert Sellers hired Appellant to fix a roof on a property he rented in Butler. (T. at 488-492). Appellant went to the bank with Mr. Sellers and Appellant was given $4,000 cash up front. (T. at 516). The first thing Appellant was supposed to do was pay for a dumpster the following weak, but it did not appear, and neither did Appellant. (T. at 493-494). Appellant told Mr. Chapman and Mr. Sellers that his sisters had died in a car accident, causing him to be out of state. (T. at 494-495). More time passed until August when Appellant still had not started any of the work, so Mr. Chapman and Mr. Sellers filed a police report. (T. at 495-496). Police contacted Appellant, and he said he would begin work by the 5th of August. (T. at 549). No work was ever performed on the property by Appellant. (T. at 498-499).

**{¶16}** Following a jury trial, Palmer was convicted on all counts. The court merged the second count of kidnapping into the first count. The court then sentenced Palmer to

eight (8) years for the felonious assault and eleven (11) years for the kidnapping, to be served consecutively. The court also imposed twelve (12) months on the theft count to be served concurrently to the other counts

{¶17} Appellant now appeals, assigning the following errors for review:

**ASSIGNMENTS OF ERROR**

{¶18} "I. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY EXCLUDING A WITNESS WHO COULD TESTIFY THAT THE VICTIM ADMITTED SHE HAD FABRICATED HER CLAIMS AGAINST APPELLANT.

{¶19} "II. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY EXCLUDING A WITNESS WHO COULD TESTIFY THAT THE VICTIM PREVIOUSLY HARMED HERSELF AND BLAMED IT ON SOMEONE ELSE.

{¶20} "III. APPELLANT'S RIGHT TO DUE PROCESS AND THE RULES OF EVIDENCE WERE VIOLATED WHEN THE PROSECUTION IMPROPERLY USED THE VICTIM'S PRIOR STATEMENT TO THE POLICE ON DIRECT EXAMINATION TO BOLSTER HER TESTIMONY.

{¶21} "IV. APPELLANT'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COUNSEL FAILED TO OBJECT TO THE PROSECUTION'S IMPROPER USE OF THE VICTIM'S PRIOR STATEMENT.

{¶22} "V. APPELLANTS RIGHT TO A FAIR TRIAL WAS VIOLATED WHEN THE VICTIM TOLD THE JURY THAT APPELLANT HAD ALREADY BEATEN THIRTY-ONE COUNTS OF KIDNAPPING.

{¶23} "VI. THE TRIAL COURT ERRED BY PERMITTING THE STATE TO UTILIZE A DEPOSITION IN THE PLACE OF A MISSING WITNESS.

{¶24} "VII. APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED WHEN THE TRIAL COURT DENIED A CONTINUANCE OF TRIAL TO PROVIDE APPELLANT WITH TIME TO LOCATE WITNESSES.

{¶25} "VIII. APPELLANT'S RIGHT TO COUNSEL WAS VIOLATED WHEN THE TRIAL COURT DENIED DEFENSE COUNSEL'S MOTION TO WITHDRAW.

{¶26} "IX. APPELLANT'S RIGHTS TO DUE PROCESS WERE VIOLATED WHEN HE SUFFERED CONVICTIONS FOR FELONIOUS ASSAULT AND KIDNAPPING THAT WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶27} "X. APPELLANT'S CONVICTIONS FOR ASSAULT AND KIDNAPPING WERE NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.

{¶28} "XI. APPELLANT'S RIGHTS TO DUE PROCESS WERE VIOLATED WHEN HE SUFFERED A CONVICTION FOR THEFT THAT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶29} "XII. APPELLANT'S CONVICTION FOR THEFT WAS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.

{¶30} "XIII. APPELLANT WAS DEPRIVED OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY THE CUMULATIVE EFFECT OF THE ERRORS IN THIS CASE.

**I., II.**

{¶31} In his First and Second Assignments of Error, Appellant claims the trial court erred in excluding witnesses Mark Stamper and Michael Heatherington from testifying at trial. We disagree.

{¶32} Here, the trial in this matter commenced on January 12, 2017. Appellant did not disclose that he wanted to offer the testimony of Mark Stamper and Michael Heatherington until January 17, 2017, after two days of testimony had been completed. According to Appellant, Mr. Stamper would testify that Appellant (1) treated the victim well, and (2) the victim's testimony was fabricated. (T. at 708, 742-743). Michael Heatherington was to testify that he had seen the victim harm herself and blame someone else in the past. (T. at 742).

{¶33} The trial court denied the request to call these witnesses finding that their testimony was not relevant, that the victim had not been confronted with their testimony, and that their disclosure was untimely and last minute. (T. at 747).

{¶34} Although a criminal defendant has the right to present witness testimony on his behalf, a trial court may "exclude such evidence when the orderly administration of justice is threatened by the accused's failure to promptly disclose witnesses." *State v. Moon,* 74 Ohio App.3d 162, 169 (9th Dist.1991).

{¶35} The rules of discovery, and more specifically Crim.R. 16, imbue trial courts with the discretion to exclude testimony that is not disclosed in a timely manner in order to prevent surprise and ensure a fair trial. *State v. Barrios,* 9th Dist. No. 06CA009065, 2007–Ohio–7025, ¶18. "Exclusion is a permissible sanction 'as long as it would not completely deny the defendant his constitutional right to present a defense.' " *Id.,* quoting *State v. Sinkfield,* 2d Dist. No. 18663, 2001 WL 1517314 (Nov. 30, 2001). A trial court's decision to exclude testimony is a discretionary one, therefore we review a court's decision to exclude evidence under an abuse of discretion standard of review. *Barrios* at ¶18. An abuse of discretion implies that the trial court's attitude was unreasonable,

arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

**{¶36}** Given our review of the record, we cannot conclude that the trial court abused its discretion by excluding the testimony of these two witnesses. Appellant has not shown that the trial court abused its discretion. The court excluded these witnesses in order to avoid unfair surprise and to ensure a fair trial. *See Barrios,* 2007–Ohio–7025, at ¶18. Additionally, the court's ruling did not completely deny Appellant his constitutional right to present a defense. *See Id.* Appellant was still able to attack the credibility of the victim through cross-examination.

**{¶37}** Appellant's First and Second Assignments of Error are denied.

**III.**

**{¶38}** In his Third Assignment of Error, Appellant argues the trial court erred in allowing the use of the victim's prior statement to the police. We disagree.

**{¶39}** Near the end of the victim's testimony, the state presented her with a copy of her written statement to the police. The prosecutor then proceeded to question the victim about some of the details in her statement. Appellant argues that this was an improper use of a prior written statement in contravention of Evid.R. 612, which provides:

> If a witness uses a writing to refresh memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. The adverse party is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the

subject matter of the testimony the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal. If a writing is not produced or delivered pursuant to order under this rule, the court shall make any order justice requires, except that in criminal cases when the prosecution elects not to comply, the order shall be one striking the testimony or, if the court in its discretion determines that the interests of justice so require, declaring a mistrial.

**{¶40}** The written statement was not submitted into evidence.

**{¶41}** Initially, we note Appellant failed to object to the use of the written statement at trial. We therefore review the admission of the statements for plain error.

**{¶42}** Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

**{¶43}** Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id.* The Ohio Supreme Court recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, that the accused is

"required to demonstrate a reasonable *probability* that the error resulted in prejudice— the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *Id.* at ¶ 22, *citing United States v. Dominguez Benitez*, 542 U.S. 74, 81– 83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). *Accord, State v. Thomas,* —— Ohio St.3d – ——, 2017-Ohio-8011, —— N.E.3d ——, ¶ 32–34.

**{¶44}** If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; the Supreme Court has "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice.' " (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. *Accord, State v. Thomas, –* — Ohio St.3d ——, 2017-Ohio-8011, —— N.E.3d ——, ¶ 32–34.

**{¶45}** "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). Evid.R. 402 states that all relevant evidence is admissible. "Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

**{¶46}** Upon review, we find admission of the statements does not rise to the level of plain error because the outcome of the trial would not have been different absent its admission. Plain error or defect under Crim.R. 52(B) does not occur unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Long,* 53 Ohio

St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. Here, we find that this testimony was mainly cumulative as the victim had already testified as to what happened. Further, Appellant cross-examined the victim with regard to the written statement. (T. at 288-289).

**{¶47}** Also, the victim's credibility was an issue in this case and had been challenged by Appellant during opening statements. (T. at 224).

**{¶48}** Evid.R. 801(D)(1)(b) provides that a statement is not hearsay, and is therefore admissible if it is a prior statement by a witness that is "consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive[.]"

**{¶49}** It has been consistently held that attacking a victim's credibility during opening statements is grounds for permitting a prior consistent statement into evidence pursuant to Evid.R. 801(D)(1)(b). *State v. Hunt*, 10th Dist. No. 12AP–103, 2013–Ohio–5326, ¶ 39 ("Defense counsel's opening statement implied that Lewis had been untruthful in her statements to police. This was an allegation of recent fabrication or improper influence that allowed the state to introduce Lewis's prior consistent statements to rehabilitate her testimony."); *State v. Crawford*, 5th Dist. No. 07 CA 116, 2008–Ohio–6260, ¶ 64 ("It has previously been held that such implications [of fabrication] during opening statements are sufficient to allow the State's use of Evid.R. 801(D)(1)(b)"); *State v. Abdussatar*, 8th Dist. No. 86406, 2006–Ohio–803, ¶ 15 ("Attacking a victim's credibility during opening statement has been found to constitute sufficient grounds for permitting a prior consistent statement into evidence pursuant to Evid.R. 801(D)(1)(b). Therefore, because defense counsel contended the victim fabricated the rape, and because the

victim testified and was subject to cross-examination, the trial court did not err by allowing the letter to be admitted into evidence.")

{¶50} The Twelfth District explained when a court may admit a prior consistent statement:

> For the rule to apply, the declarant must be subject to cross-examination and the statement must be offered to rebut a charge that the declarant lied or was improperly influenced in his testimony. [*State v.*] *Williams*, [12th Dist. No. CA2007–04–087,] 2008–Ohio–3729, ¶ 12. To be admissible, prior consistent statements must have been made before the existence of any motive or influence to falsify testimony. *Id.* In determining whether to admit a prior consistent statement for rebuttal purposes, a trial court should take a generous view of the entire trial setting to determine if there was sufficient impeachment of the witness to amount to a charge of fabrication or improper influence or motivation. [*State v.*] *Grays*, [12th Dist. No. CA2001–02–007, 2001–Ohio–8679] at 12.

{¶51}  *State v. Smith*, 12th Dist. No. CA2009–02–038, 2010–Ohio–1721, ¶ 103.

{¶52} Based on the foregoing, we find no plain error was committed by the trial court in allowing said questioning and testimony.

{¶53} Appellant's Third Assignment of Error is denied

**IV.**

{¶54} In his Fourth Assignment of Error, Appellant argues he was denied the effective assistance of counsel. We disagree.

**{¶55}** A properly licensed attorney is presumed competent. *State v. Hamblin,* 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, Appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

**{¶56}** Here, Appellant argues that his trial counsel was ineffective in failing to object to the state's use of the victim's prior written statement.

**{¶57}** Competent counsel may reasonably hesitate to object to potential errors in the jury's presence because objections may be considered bothersome by the jury and may tend to interrupt the flow of a trial. *State v. Howell*, 5th Dist. Delaware No. 15 CAA 12 0098, 2016–Ohio–7749, ¶ 39, appeal not allowed, 150 Ohio St.3d 1409, 2017–Ohio–6964, 78 N.E.3d 909. Thus counsel's failure to object may have been sound trial strategy.

**{¶58}** Further, for the reasons set forth in Assignment of Error III, Appellant has not demonstrated the result of the trial would have been different.

**{¶59}** Appellant's Fourth Assignment of Error is denied.

**V.**

**{¶60}** In his Fifth Assignment of Error, Appellant argues that he was denied a fair trial when the victim testified that Appellant had beaten thirty-one counts of kidnapping previously. We disagree.

**{¶61}** The following exchange took place during the victim's testimony:

Q: Were you scared of Billy finding you?

A: Yes.

Q: What did you think would happen if he did?

A: That if he didn't beat me, I would be killed.

Q: Was there a reason you didn't go to the police right away?

A: I just wanted to be away. He's already beaten 31 counts of kidnapping.

I didn't want to be the next one to get - -

**{¶62}** At this point, the state immediately moved to strike and requested the court to give the jury a curative instruction. The trial court struck the comment and gave a curative instruction to the jury:

Court: Whatever she said then is not testimony in this case. It is not

factual and it is not going to be accepted as factual in this case.

…

You are instructed to disregard her last comment. It is not factual.

(T. at 269-270)

**{¶63}** A jury is presumed to have followed the instructions, including curative instructions, given by a trial judge. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623, 634 (1995); *State v. Loza,* 71 Ohio St.3d 61, 75, 641 N.E.2d 1082, 1100 (1994); *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 93. Curative instructions are presumed to be an effective way to remedy errors that occur during the trial. *State v. Treesh*, 90 Ohio St.3d 460, 480, 2001–Ohio–4, 739 N.E.2d 749.

**{¶64}** Appellant has not pointed to any evidence in the record that the jury failed

to do so in this case. *State v. James*, 5th Dist. Stark No. 2016CA00144, 2017-Ohio-7861. The comments were isolated in the trial and were not so prejudicial that an impartial verdict could not be reached. Further, the statement was immediately followed by a short, authoritative instruction to the jury to disregard the statement, which was sufficient to remedy any possible error regarding the struck testimony. Further, based on the remainder of the victim's testimony, together with the other evidence, we do not find the statement was so prejudicial that an impartial verdict could not be reached.

**{¶65}** Accordingly, Appellant's Fifth Assignment of Error is overruled.

**VI.**

**{¶66}** In his Sixth Assignment of Error, Appellant argues the trial court erred in permitting the State to use an unavailable witness' deposition at trial. We disagree.

**{¶67}** In general, a witness must testify at trial in person, but Crim.R. 5 allows for the use of a videotaped deposition if a witness is unavailable, as defined in Evid.R. 804(A), which means that the party offering the deposition has been unable to procure the attendance of the witness by subpoena, or that the witness is out of state. *State v. Austin* (1998), 131 Ohio App.3d 329, 338, 722 N.E.2d 555.

**{¶68}** At the time of trial, the witness, Mr. Sellers, refused to return from Florida to testify because he was suffering from a number of health conditions which were exacerbated by the cold weather and had recently undergone surgery for an aneurysm. (T. at 524-525). Mr. Sellers was offered free airfare to return to Ohio for the trial but refused. Appellant's counsel was present at the deposition and had an opportunity to cross-examine the witness. Therefore, the use of the witness' videotaped deposition satisfied the requirements of Crim.R. 15.

{¶69} Based on the foregoing, we find the trial court did not err in admitting the witness' deposition testimony.

{¶70} Appellant's Sixth Assignment of Error is overruled.

**VII.**

{¶71} In his Seventh Assignment of Error, Appellant argues the trial court erred in denying his motion for continuance. We disagree.

{¶72} "The grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge." *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 423 N.E.2d 1078. Therefore, an appellate court must not reverse a trial court's decision to deny a motion for continuance unless it finds that the trial court abused its discretion. *Id.*; *State v. Wheat,* 5th Dist. Licking App. No. 2003–CA–00057, 2004–Ohio–2088  The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157.

{¶73} In evaluating whether the trial court has abused its discretion in denying a continuance, appellate courts apply a balancing test which takes into account a variety of competing considerations, including the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; and whether the defendant contributed to the circumstance which gives rise to the request for a continuance. *State v. Unger,* 67 Ohio St.2d 65, 67–68, 423 N.E.2d 1078 (1981).

{¶74} In the instant case, Appellant was arrested on August 9, 2016 and indicted September 15, 2016. Appellant was appointed counsel on September 27, 2016, and trial was initially scheduled for October 27, 2016. Defense counsel moved for a continuance of trial to allow him time to retain an investigator and locate witnesses. The trial was rescheduled to December 15, 2016. Counsel moved for a second trial continuance to allow him additional time to find an appropriate investigator and give him time to work. The trial was then continued to January 12, 2017. On January 5, 2017, defense counsel filed a third motion for a continuance, stating that he was still waiting on the Bill of Information and certain discovery which had been requested from the State of Ohio. A hearing was conducted on January 10, 2017, wherein the motion to continue was discussed. At said hearing, it was noted that the requested discovery had been provided to Appellant one day after his motion. Appellant argued that he needed additional time to locate necessary witnesses. (T. at 41). After additional discussions with Appellant and his counsel, the trial court denied Appellant's motion to continue the trial for a third time.

{¶75} Upon consideration of the *Unger* factors, we do not find the trial court abused its discretion. As set forth above, this case was continued on two prior occasions at the request of Appellant for the same reasons as stated in this motion.

{¶76} Based on the foregoing, we find the trial court did not err in denying Appellant's third request for a continuance of trial.

{¶77} Appellant's Seventh Assignment of Error is overruled.

**VIII.**

{¶78} In his Eighth Assignment of Error, Appellant argues the trial court erred in denying his trial counsel's request to withdraw. We disagree.

**{¶79}** A trial court's decision to grant or deny an attorney's motion to withdraw from representing a client will not be disturbed on appeal absent an abuse of discretion. *McGraw v. Convenient Food Mart* (June 18, 1999), Lake App. No. 97-L-271, unreported citing *Bennett v. Bennett* (1993), 86 Ohio App.3d 343, 347, 620 N.E.2d 1023. Courts are reluctant to approve withdrawal of counsel on the eve of trial or when the client will be left unrepresented at trial." *McGraw, supra,* quoting Guttenberg & Snyder, The Law of Professional Responsibility in Ohio (1992), 79.

**{¶80}** To discharge a court-appointed attorney, the defendant must show " 'a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.' " *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792, 798–99 (1988) citing *People v. Robles* (1970), 2 Cal.3d 205, 215, 85 Cal.Rptr. 166, 173, 466 P.2d 710, 717.

**{¶81}** Here, Appellant has not established that such a breakdown occurred. Indeed, our review of the record indicates Appellant's counsel and the hired investigator were doing their best in locating the witnesses with the information provided to them by Appellant. (T. at 12, 15-16). During the hearing on January 10, 2017, the trial court stated that it appeared that Appellant's counsel was vigorously pursuing a defense on Appellant's behalf. (T. at 1-6).

**{¶82}** For these reasons, we do not find any abuse of discretion by the trial court. We hold appellant's argument is without merit.

**{¶83}** Appellant's Eighth Assignment of Error is overruled.

**IX., X.,**

{¶84} In his Ninth and Tenth Assignments of Error, Appellant argues that his convictions for felonious assault and kidnapping were against the manifest weight and sufficiency of the evidence. We disagree.

{¶85} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶86} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, *supra*, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs

heavily against the conviction." *Id.*

**{¶87}** Here, Appellant argues that his convictions for felonious assault and kidnapping are based on the testimony of the victim who was not credible because she was a drug user at the time the offenses occurred. Appellant does not further explain the relevance of this information to his convictions. Appellant also argues that there were inconsistencies with her prior statements and with other witnesses.

**{¶88}** Upon review, we find that the jury had before it the testimony of the victim wherein she states that Appellant assaulted her and cut her with a knife and a mirror and tied her up and restrained her for approximately six (6) hours, the physical evidence showing the scar on the victim's ear, DNA evidence indicating that it was the victim's blood on the mirror and indicating that the blood on the knife belonged to a female and that the victim could not be excluded as the source. (T. at 420, 428). Further, the victim did admit to lying at the preliminary hearing with regard to walking to Motomart instead of being driven to her parents' house and then to a friend's house. (T. at 301-302).

**{¶89}** It is axiomatic that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002–Ohio–2126, 767 N.E.2d 216, ¶ 79. Upon our review of the record, we find appellant's convictions for kidnapping, and felonious assault are supported by sufficient evidence. We further find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that Appellant's convictions be reversed and a new trial ordered. Appellant's convictions upon those offenses are not against the manifest weight of the evidence.

**{¶90}** Appellant's Ninth and Tenth Assignments of Error are overruled.

**XI., XII.**

{¶91} In his Eleventh and Twelfth Assignment of Error, Appellant argues that his conviction for theft was against the manifest weight and sufficiency of the evidence. We disagree.

{¶92} Here, Appellant argues that there was insufficient evidence to show that he did not intend to complete the roofing job for Chapman and Sellers. Appellant further argues that he was prevented from starting the job due to his arrest and incarceration.

{¶93} At trial, evidence was presented to the jury that Appellant requested and was given $4,000 from Mr. Sellers and Mr. Chapman to fix a roof. (T. at 516). Mr. Sellers testified that Appellant was to start the job the following week by having a dumpster delivered, which never happened. *Id.* A month passed and Appellant had still not begun the job. *Id.* After numerous attempts to reach Appellant, Mr. Chapman finally was able to get in touch with him and was told by Appellant that the delay was due to the death of his sisters who lived out of state. (T. at 494). When no work had commenced by the end of July, Mr. Chapman and Mr. Sellers filed a police report. (T. at 548). Appellant never commenced work, nor did he return the money to the victims. (T. at 499, 523).

{¶94} Based on the above, the jury found that Appellant was guilty of theft by taking money by deception for a job he did not intend to complete.

{¶95} Again, the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002–Ohio–2126, 767 N.E.2d 216, ¶ 79. Upon our review of the record, we find appellant's conviction for theft is supported by sufficient evidence. We further find the jury did not clearly lose its way and create a manifest miscarriage of justice requiring that Appellant's conviction

be reversed and a new trial ordered. Appellant's conviction is not against the manifest weight of the evidence.

{¶96} Appellant's Eleventh and Twelfth Assignments of Error are overruled.

**XIII.**

{¶97} In his Thirteenth Assignment of Error, Appellant argues that the cumulative effect of the errors in this case deprived him of his rights to due process and a fair trial.

{¶98} In *State v. Brown*, 100 Ohio St.3d 51, 2003–Ohio–5059, 796 N.E.2d 506, the Ohio Supreme Court recognized the doctrine of cumulative error. However, as explained in *State v. Bethel*, 110 Ohio St.3d 416, 2006–Ohio–4853, 854 N.E.2d 150, ¶ 197, it is simply not enough to intone the phrase "cumulative error." *State v. Sapp*, 105 Ohio St.3d 104, 2004–Ohio–7008, 822 N.E.2d 1239, ¶ 103.

{¶99} Here, Appellant cites the doctrine of cumulative error, lists or incorporates the previous assignments of error, and gives no analysis or explanation as to why or how the errors have had a prejudicial cumulative effect. Thus, this assignment of error has no substance under *Bethel* and *Sapp.*

{¶100} Further, where we have found that the trial court did not err, cumulative error is simply inapplicable. *State v. Carter*, 5th Dist. Stark No. 2002CA00125, 2003–Ohio–1313, ¶ 37. To the extent that we have found that any claimed error of the trial court was harmless, or that claimed error did not rise to the level of plain error, we conclude that the cumulative effect of such claimed errors is also harmless because taken together, they did not materially affect the verdict. *State v. Leonard*, 104 Ohio St.3d 54, 89–90, 2004–Ohio–6235, 818 N.E.2d 229, 270 at ¶ 185.

{¶101} As this case does not involve multiple instances of error, Appellant's thirteenth assignment of error is overruled.

{¶102} For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.

By: Wise, P. J.

Gwin, J., and

Hoffman, J., concur.

JWW/D 0222